[S.F. No. 23309. In Bank. May 20, 1976.]

CATHRYN D. EDWARDS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
SANTA CLARA UNIFIED SCHOOL DISTRICT,
Real Party in Interest.

**COUNSEL**

Hersh, Hadfield, Jorgensen & Fried, LeRoy Hersh and Nancy Hersh for Petitioner.

No appearance for Respondent.

Hoge, Fenton, Jones & Appel, H. R. Lloyd, Jr., and John L. Hendry for Real Party in Interest.

**OPINION**

**RICHARDSON, J.**—In this case we decide, among other issues, whether the plaintiff in a personal injury action may insist upon the presence of his counsel at an examination conducted by defendant's psychiatrist. We conclude that such a psychiatric examination should occur in the presence of the examiner and the examinee alone.

In the present case, petitioner Cathryn Edwards (plaintiff), through her guardian ad litem, filed a personal injury action in November 1971 against real party in interest Santa Clara Unified School District (defendant) and others for injuries sustained by her while using certain school equipment. Plaintiff alleged that, as a result of defendant's negligence in failing to provide proper instruction and supervision, she sustained physical and emotional injuries for which she sought general damages of $500,000, together with various special damages.

Defendant, having answered the complaint as amended, pursuant to Code of Civil Procedure section 2032, sought to obtain a four-hour examination conducted by Mervyn Shoor, M.D., a psychiatrist selected by defendant. Plaintiff, however insisted that her attorney attend the examination, objected to the selection of Dr. Shoor as examiner, and also objected to the length of the proposed examination.

Defendant thereupon moved the trial court for an order compelling plaintiff to submit to the examination without the presence of her counsel. In support of its motion defendant submitted a letter from Dr. Shoor which stated that he would be unable to conduct a proper and accurate psychiatric examination in the presence of plaintiff's counsel, since counsel's attendance would necessarily distort and impair the clinical picture, precluding an objective examination and evaluation. Defendant also submitted a declaration by its counsel reciting that plaintiff had claimed a substantial amount of damages for emotional injuries; that she had been under the care of various psychiatrists; that she was currently seeing a psychologist, Thomas E. Parker, M.D.; that Dr. Shoor was an independent qualified psychiatrist who, in the past, had been appointed by the court to render opinions on psychiatric matters; and that Dr. Shoor refused to examine plaintiff in the presence of an attorney.

Plaintiff, while not objecting to the psychiatric examination itself, asked the trial court to rule (1) that the examination be conducted in the presence of her counsel, (2) that the examination not be conducted by Dr. Shoor (with whom she assertedly feels uncomfortable and fearful), and (3) that the examination's length be reduced from the four-hour period sought by defendant. In support of her position plaintiff submitted the declaration of Dr. Parker who stated that plaintiff had expressed extreme anxiety regarding further contact with Dr. Shoor, and that in view of plaintiff's history of severe depression it might be dangerous to subject her to a psychiatric examination "without the presence of somebody with whom she can identify as a supporting force," such as her attorney.

The trial court granted defendant's motion, staying its order temporarily to permit plaintiff, if she so elected, to withdraw her claim of damages for emotional injury. Plaintiff refused to surrender her claim and now seeks mandate to compel the trial court to vacate its order. She contends that the court abused its discretion in three separate respects. As will appear, we conclude that none of plaintiff's contentions has merit.

## 1. *Presence of Counsel at Psychiatric Examination*

■ Section 2032, subdivision (a), of the Code of Civil Procedure provides in pertinent part that, "In an action in which the mental or physical condition . . . of a party, . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental . . . examination by a physician. . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." It is apparent that the section does not, expressly or impliedly, require the presence of the counsel representing the examinee. Similarly, present California authorities hold that counsel's presence is not required. (*Whitfield* v. *Superior Court* (1966) 246 Cal.App.2d 81, 86 [54 Cal.Rptr. 505], hg. den.; *Durst* v. *Superior Court* (1963) 222 Cal.App.2d 447, 452-453 [35 Cal.Rptr. 143, 7 A.L.R.3d 874], hg. den.; see *Munoz* v. *Superior Court* (1972) 26 Cal.App.3d 643, 645 [102 Cal.Rptr. 686].)

Plaintiff relies primarily upon our decision in *Sharff* v. *Superior Court* (1955) 44 Cal.2d 508, 510 [282 P.2d 896, 64 A.L.R.2d 494], in which we held that the plaintiff in a personal injury action may not be required to submit to a *physical* examination by the defendant's doctor without the presence of her attorney. In *Sharff,* we reasoned that "Whenever a doctor selected by the defendant conducts a physical examination of the plaintiff, there is a possibility that improper questions may be asked, and a lay person should not be expected to evaluate the propriety of every question at his peril. The plaintiff, therefore, should be permitted to have the assistance and protection of an attorney during the examination. [Citation.]" (*Id.,* at p. 510; see also *Gonzi* v. *Superior Court* (1959) 51 Cal.2d 586, 589 [335 P.2d 97], requiring the presence of a reporter during a physical examination of the plaintiff by defendant's doctor to insure accurate reporting of the examination.)

Plaintiff maintains that *Sharff's* rationale is equally applicable to a *psychiatric* examination. But as we have previously observed, the cases have rejected this contention. *Whitfield* v. *Superior Court, supra,* 246 Cal.App.2d 81, expressly held that the trial court did not abuse its discretion in denying the plaintiff's request that her attorney and a court reporter be present during a psychiatric examination ordered under section 2032. The *Whitfield* court distinguished *Sharff* and *Gonzi, supra,* on the ground that neither case involved a psychiatric examination which

might have been impaired by the presence of third parties during the examination. *Whitfield* relied upon *Durst* v. *Superior Court, supra,* 222 Cal.App.2d 447, which had also similarly distinguished *Sharff* and *Gonzi. Whitfield* and *Durst* emphasized an important distinction. Unlike a physical examination, which consists of little or no analysis of the examinee's mental processes, a psychiatric examination is almost wholly devoted to a careful probing of the examinee's psyche for the purpose of forming an accurate picture of his mental condition.

In *In re Spencer* (1965) 63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33], decided subsequent to both *Sharff* and *Gonzi,* we held that so long as certain safeguards were imposed, a criminal defendant who voluntarily submits to an examination conducted by a court-appointed psychiatrist has no legal right to the presence of counsel at the examination. While we note the different factual context in which *Spencer* arose, our rationale in that case in our view is fully dispositive of plaintiff's contention herein. In *Spencer* we quoted with approval Judge David Bazelon's language in *Rollerson* v. *United States* (1964) 343 F.2d 269, 274 [119 App.D.C. 400]: " 'The basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject.' " (*In re Spencer, supra,* at p. 411.) In referring to the presence of counsel we summarized the controlling considerations in our own clear and unambiguous language: ". . . we recognize that such presence may largely negate the value of the examination. Surely the presence and participation of counsel would hinder the establishment of the rapport that is so necessary in a psychiatric examination. (*Durst* v. *Superior Court* [*supra*] 222 Cal.App.2d 447, 452-454 . . . .)" (*Ibid.*)

Our holding in *Spencer* was set forth in the context of our review of the penalty phase of a trial in which the death penalty had been imposed and affirmed. Logic suggests, a fortiori, that a psychiatric examination of a party in a *civil* case should ordinarily be conducted without counsel if the examination is to remain an effective and meaningful device for ascertaining the truth.

Plaintiff argues that her counsel's presence should be required in order to protect her from improper questioning, to assure accurate reporting, and to make the examination a more comfortable experience for her. We consider these contentions and will conclude that, neither singly nor together, are they of sufficient validity to overcome defendant's statutory right to an effective psychiatric examination conducted under circumstances best calculated to assure that the trier may acquire a fair and

objective evaluation of the impact, if any, of the accident in question on plaintiff's mental and emotional condition.

We are unable to accept the thesis that counsel's presence is necessary to protect the examinee from "improper" questions. The analyst in a psychiatric examination seeks by careful direction of areas of inquiry to probe, possibly very deeply, into the psyche, measuring stress, seeking origins, tracing aberrations, and attempting to form a professional judgment or interpretation of the examinee's mental condition. Given such techniques and purposes we do not think that an attorney, no matter how well intentioned, can fairly and objectively monitor such an examination. Psychiatry is a discipline requiring highly specialized skills. Further, while properly objecting to a question on legal grounds, counsel does not necessarily possess the ability to define the psychiatric relevance of elicited answers. Many questions which would be legally objectionable, if posed in a courtroom, might be very relevant in the formulation of a sound psychiatric judgment. Rather than encourage a procedure which would permit counsel to interject his own arguments and objections into the examination, we believe other procedural safeguards adequately protect plaintiff's legitimate interests.

Plaintiff suggests further that counsel's presence will give the examinee comfort, assurance and emotional support when facing a hostile examination. Depending on the examinee's mental condition, *every* psychiatric examination, including that of the examinee's own expert, may be viewed by the examinee as hostile. To permit the presence of others at a psychiatric examination for purposes of comfort and support presents difficult questions of limitation. Perhaps a family member or religious advisor or the examinee's psychiatric counselor would furnish the best "comfort" and "emotional support." We are convinced that the larger the number of persons attending the examination the lesser the prospect of the necessary rapport stressed by us in *Spencer*. We do not suggest that trial courts lack discretion to issue protective orders where necessary to safeguard the physical or mental condition of the examinee. However, we are satisfied that to require the addition of other persons in the examining room would be distracting, if not disrupting. As *Spencer*, *Whitfield*, and *Durst* explain, of paramount importance is the concern that the examination be valid and have meaning, free from outside influences which might disrupt it.

Finally, counsel's presence is not required to assure accuracy in reporting the examination. As pointed out in *Whitfield* v. *Superior Court*,

*supra,* 246 Cal.App.2d 81, 85-86, a trial court might reasonably conclude that if the examinee knows his statements are being recorded verbatim, he will react defensively, thereby preventing the free, open and objective communication essential to an effective psychiatric examination. Conflicts regarding the questions and answers elicited at the examination can be resolved through existing procedural methods.

We emphasize the availability of numerous alternative procedural devices for plaintiff's protection. Examinee's counsel, by way of pretrial discovery, has complete access to all of the notes and records of the examiner. The examiner may be deposed. Counsel may exhaustively test and challenge the examiner's conclusions, carefully exploring the reasons therefor, including the specific questions and answers exchanged between examiner and examinee. During the deposition counsel may have the benefit of his own psychiatric expert at his side to prompt him into every conceivable area of legitimate inquiry. At trial, counsel may by appropriate *voir dire* and motions exclude or limit statements made by his client. He may introduce contrary expert evidence. By cross-examination he may subject the examiner to a searching and probing inquiry, again with the help of counsel's professional advisor. Plaintiff neither lacks, nor should lack, procedural safeguards. However, at the sensitive point of the psychiatric examination itself, given the need for a special and private rapport between examiner and examinee, we think the purposes of the examination are best served by its conduct on a one-to-one basis.

Our conclusions are fortified by the element of fairness inhering in the procedural posture of the case. Plaintiff's own psychiatrist has had months, if not years, of unlimited access to plaintiff for psychoanalysis and treatment. This professional relationship has been, as it should be, unfettered. Fundamental fairness requires that a similar unrestricted professional exposure for a brief period be allowed the other side. This will assist the trier in obtaining a balanced and even-handed professional evaluation of the relationship of trauma to plaintiff's mental condition.

### 2. *Examination by Dr. Shoor*

■ Plaintiff also has contended that the trial court abused its discretion in requiring plaintiff to be examined by Dr. Shoor in spite of her expressed fear and dislike of him. We have impliedly recognized that ordinarily the examining party may choose the person to conduct a physical examination taken under Code of Civil Procedure section 2032.

(See *Gonzi* v. *Superior Court, supra,* 51 Cal.2d 586, 589-590; *Sharff* v. *Superior Court, supra,* 44 Cal.2d 508, 510; see also Annot., Personal Injury-Examination-Doctor, 33 A.L.R.3d § 4[c], pp. 1012, 1020-1023.) Of course, the trial court has broad discretion to determine whether good cause exists for refusing to accept the examining party's choice of a physician. (See *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 378-380 [15 Cal.Rptr. 90, 364 P.2d 266]; *Sanden* v. *Mayo Clinic* (8th Cir. 1974) 495 F.2d 221, 225; 8 Wright & Miller, Federal Practice and Procedure (1970) Physical and Mental Examination, § 2234, pp. 674-675.) The authorities suggest that a party's unsupported objections to a particular doctor conducting the examination should be given little weight. (Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) Physical and Mental Examinations, § 7.09, p. 493; *Gale* v. *National Transp. Co.* (S.D.N.Y. 1946) 7 F.R.D. 237, 238.)

As noted above, plaintiff has not attempted to disprove defendant's assertion that Dr. Shoor is an independent qualified psychiatrist who has conducted numerous psychiatric examinations by court appointment. The rather general objections of plaintiff and her own psychologist regarding plaintiff's negative reaction to Dr. Shoor were insufficient to disqualify Dr. Shoor as a matter of law, and we cannot say the trial court abused its discretion in denying this aspect of plaintiff's request.

3. *Length of Examination*

Plaintiff has objected to the length of the proposed examination and asks us to select a period less than the four-hour confrontation sought by defendant. Yet section 2032 contemplates that the trial court shall specify in its order the conditions under which the examination is to be conducted, and the fixing of these conditions is a matter entrusted to the sound discretion of the trial court. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 378-380, 383; *Sanden* v. *Mayo Clinic, supra,* 495 F.2d 221, 225; Louisell & Wally, Modern Cal. Discovery, *supra,* Physical and Mental Examinations, § 7.06, p. 483; 3 DeMeo, Cal. Deposition and Discovery Practice (1971) Physical, Mental, and Blood Examination of Persons, ¶ 11.01(8), p. 11.01-14, et seq.)

In the present case, Dr. Shoor requested a series of four fifty-minute interviews; at plaintiff's urging, defendant agreed to a single examination. Plaintiff has not shown that an effective examination could be performed in less than four hours, and we believe the trial court had discretion to require her to undergo an examination of this length.

The alternative writ heretofore issued is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., and Clark, J., concurred.

**SULLIVAN, J.**—I concur and dissent. I agree with the majority insofar as they conclude that the trial court did not abuse its discretion in compelling plaintiff to be examined by Dr. Shoor and in requiring her to submit to a four-hour examination. (*Ante,* pp. 912-913.)

However, I cannot join the majority in their conclusion that plaintiff was not entitled to the presence of her counsel at the psychiatric examination. I am of the opinion that the trial court abused its discretion in ordering plaintiff to submit to a psychiatric examination under Code of Civil Procedure section 2032, subdivision (a),[1] without the presence of her attorney. I would therefore reverse that portion of the trial court's order.

The question of whether a party is entitled to have his attorney present during a medical examination ordered at the request of his adversary is one which this court has already faced and resolved. In *Sharff* v. *Superior Court* (1955) 44 Cal.2d 508 [282 P.2d 896, 64 A.L.R.2d 494], we held that the plaintiff in a personal injury action may not be required to submit to an oral and physical examination by the defendant's doctor without the presence of her attorney and that a trial court order to that effect "imposed an unwarranted condition on [the plaintiff's] right to have the case proceed to trial." (*Id.,* at p. 511.) We reasoned as follows: "The doctor should, of course, be free to ask such questions as may be necessary to enable him to formulate an intelligent opinion regarding the nature and extent of the plaintiff's injuries, but he should not be allowed to make inquiries into matters not reasonably related to the legitimate scope of the examination. [Citations.] Whenever a doctor selected by the defendant conducts a physical examination of the plaintiff, there is a possibility that improper questions may be asked, and a lay person should not be expected to evaluate the propriety of every question at his peril. The plaintiff, therefore, should be permitted to have the assistance and protection of an attorney during the examination. [Citation.]" (*Id.,* at p. 510.)

---

[1] Hereafter, unless otherwise indicated, all section references are to the Code of Civil Procedure.

This reasoning is even more compelling in the case of a psychiatric examination, the entire substance of which is an interview between patient and doctor. Under these circumstances, the examinee is particularly vulnerable to possible efforts by his adversary's representative to elicit damaging responses and information beyond the permissible scope of the examination. Furthermore, the ordeal of submitting oneself to the probing inquiries of someone whom the examinee may, as in the instant case, view as a hostile medical force is not to be taken lightly. The attorney's presence will serve the dual purpose of protecting the examinee against improper questioning and at the same time providing a certain degree of comfort and support to make the experience a more tolerable one.

The majority argue that there is a settled distinction between psychiatric examinations and physical examinations which removes the former from our holding in *Sharff* v. *Superior Court, supra,* 44 Cal.2d 508. They rely upon Court of Appeal decisions which draw this proposed distinction, on the theory that the attorney's presence may prevent effective psychiatric examination by distracting the examinee and inhibiting her freedom of expression. (See e.g., *Whitfield* v. *Superior Court* (1966) 246 Cal.App.2d 81, 86 [54 Cal.Rptr. 505]; *Durst* v. *Superior Court* (1963) 222 Cal.App.2d 447, 452-453 [35 Cal.Rptr. 143, 7 A.L.R.3d 874].)

I cannot accept this distinction. Where a court orders a psychiatric examination at the request of one party, I find it difficult to believe that the atmosphere of the examination will be conducive to "a special and private rapport between examiner and examinee" (*ante,* at p. 912), or that such atmosphere will be destroyed by the attorney's presence. As a matter of fact, it would seem that a party/examinee would be more likely to relax and respond candidly to an opponent's doctor if she were secure in the knowledge that her attorney would object to improper questions. In any event, I find that the examinee's interest in the protection offered by the attorney's presence outweighs any potential infringement upon the effectiveness of the examination.

The cases cited by the majority in support of their argument are either distinguishable from the instant matter or not persuasive. In *Durst* v. *Superior Court, supra,* 222 Cal.App.2d 447, the plaintiff brought suit against several insurance companies seeking to recover under personal disability policies for an allegedly disabling psychosis. He had been examined by 21 doctors, including psychiatrists, who could not agree on

whether he was in fact suffering from the claimed psychosis. In order to assist the parties in reaching a settlement or, in the alternative, to aid the trier of fact in resolving the conflict, the trial court, on its own motion under section 1871,[2] appointed an impartial psychiatrist to examine the plaintiff. Relying upon our decisions in *Sharff* v. *Superior Court, supra,* 44 Cal.2d 508, and *Gonzi* v. *Superior Court* (1959) 51 Cal.2d 586 [335 P.2d 97],[3] the plaintiff requested that his counsel and a court reporter be present during the examination. The trial court and the Court of Appeal denied the plaintiff's request. In so doing, the appellate tribunal distinguished the case before it from *Sharff* and *Gonzi* in two respects. First, the court reasoned that unlike an examination ordered under section 2032, an examination conducted by virtue of section 1871 is not an adversary proceeding: "The difference between section 1871 and section 2032 of the Code of Civil Procedure should be kept clearly in mind. Under section 2032 *one of the parties* may request the court to order a person to submit to examination. This examination may be conducted by the physician *for the party* requesting the examination, *and in a sense might be considered an adversary proceeding.* In contrast, under section 1871 the examination is made on the court's own motion and it may appoint an *independent and disinterested expert* who serves the purpose of providing the court with an impartial report." (222 Cal.App.2d at p. 451; italics added.)

Second, the *Durst* court found an additional distinguishing factor in the circumstance that the proposed examination was a psychiatric one whereas *Sharff* and *Gonzi* involved physical examinations. The court based this distinction on the claim that the presence of an attorney or court reporter would detract from the ability of a psychiatrist to conduct a meaningful examination.

As will be explained herein, in the case of examination requested under section 2032, I do not agree that such a distinction should be drawn because I believe that the importance of the protection afforded the examinee by the attorney outweighs the risk of any improper interference by the latter with the examination, which interference can be dealt with by an appropriate protective order. We expressed these views in *Sharff* in the course of rejecting the same argument made in

---

[2]The provision authorizing the appointment of experts by the court is presently embodied in Evidence Code section 730.

[3]In *Gonzi* v. *Superior Court, supra,* 51 Cal.2d 586, we held that a court must grant permission, at the request of either party, for a reporter to be present during a physical examination ordered under section 2032. (*Id.,* at p. 589.)

*Durst* and now made in the case at bench. We said in *Sharff*: "It is argued that an attorney, by making groundless objections, may hinder an examination, thereby depriving the defendant of the benefit of an informed medical opinion. The plaintiff, however, should not be left unprotected on the assumption that an attorney will unduly interfere with the examination. Should such interference occur, appropriate steps may be taken by the court to provide the doctor with a reasonable opportunity to complete his investigation of the nature and extent of any injuries the plaintiff may have sustained." (44 Cal.2d at pp. 510-511.) Indeed this paramount consideration of protecting the examinee is consistent with the basis of the *Durst* court's first distinction which emphasizes that under section 2032 it is the opposing party who is examining and interrogating the plaintiff through his agent, the selected psychiatrist, and that the examination is adversary in character.[4]

Significantly, then, the *Durst* court recognized that when under section 2032 an examination of the plaintiff is requested by the adverse party to be conducted by the adverse party's doctor, it is "important to have the plaintiff's rights protected" (222 Cal.App.2d at p. 452), but that when in contrast the examination is ordered on the court's own motion, to be conducted by an independent and disinterested expert appointed by the court to provide it with an impartial report, the plaintiff "does not require protection and suffers no prejudice . . . ." (*Id.*) The distinction lies in the fact of court appointment. It is therefore convenient at this point to comment briefly on our opinion in *In re Spencer, supra,* 63 Cal.2d 400, which cites *Durst* with apparent approval, and upon which the majority rely.

It is significant to note at the outset that *Spencer* was a criminal case involving the psychiatric examination of a defendant charged with murder, which examination was ordered by the court as required by section 1027 of the Penal Code to be conducted by psychiatrists selected and appointed by the court. At issue was the admissibility of testimony of the psychiatrist disclosing statements made to him by the defendant during the psychiatric examination. We were called upon to resolve this question in the light of *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], which dealt with the effect on a criminal

---

[4] I would leave open the question as to whether the examinee's attorney may be excluded from a psychiatric examination by an expert appointed by the court pursuant to Evidence Code section 730, superseding in part former Code of Civil Procedure section 1871. This question, of course, was not determined by us in *In re Spencer* (1965) 63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33], discussed *post.*

defendant's constitutional right to counsel of incriminating statements elicited from him by government agents after he had been indicted and in the absence of his counsel.

We held in *Spencer* that the psychiatrist in such a situation was "an agent of the court" (63 Cal.2d at p. 410), and that because the psychiatric examination was "a critical period of the proceedings" within the meaning of *Massiah,* the right to the presence of counsel there attached and any incriminating statements made during the examination in the absence of counsel or a valid waiver thereof were inadmissible on the issue of guilt. The remainder of our opinion on this point addressed itself to the situation where "a defendant, under the advice of counsel, submits to an examination by court-appointed psychiatrists" (63 Cal.2d at p. 412) ordered pursuant to section 1027[5] and subsequently chooses to place his mental condition in issue at the guilt trial. In this circumstance, we held, the psychiatrist should be permitted to testify, but his testimony should be received subject to a limiting instruction to the effect that any incriminating statements be regarded not as proof of the truth of the facts therein stated but only as information upon which the psychiatric opinion was based. I think it clear that *Spencer,* which is based upon constitutional considerations not here applicable, is of doubtful relevance to the case at bench, wherein the sole issue is one of sound judicial policy in civil proceedings.

The majority rely heavily upon *Whitfield* v. *Superior Court, supra,* 246 Cal.App.2d 81, where the precise question now presented to us was resolved contrary to our holding in *Sharff.* In *Whitfield* it was held that the trial judge did not abuse his discretion in denying the plaintiff's request that her attorney and a court reporter be present during a psychiatric examination ordered under section 2032. After quoting at length from our opinions in *Sharff* and *Gonzi* (see fn. 3, *ante*) and noting the twofold distinction made by the *Durst* court, the *Whitfield* court concluded that the second factor distinguishing that case from *Sharff* and *Gonzi* (namely that a psychiatric rather than a physical examination was involved) "is more persuasive." (246 Cal.App.2d at p. 85.) The *Whitfield* court therefore seems to have found no relevance in our views in *Sharff* against leaving the examinee unprotected and little significance in the views of the *Durst* court that an examination conducted under section

---

[5]Implicit in our *Spencer* holding is the conclusion that a criminal defendant who does not wish to submit to a section 1027 examination in the absence of his counsel is constitutionally entitled to refuse to do so.

2032 is adversary in character.[6] All in all I find the *Whitfield* decision to be an unconvincing and unrealistic resolution of the question.

For the foregoing reasons I conclude that respondent court abused its discretion in ordering plaintiff to submit to a psychiatric examination under section 2032 without the presence of her attorney. Accordingly, I would reverse that portion of respondent court's order.

Mosk, J., concurred.

---

[6]The *Whitfield* court continued optimistically: "We must assume that defendants here expect the doctor selected by them to make a psychiatric examination which is at least *unbiased* and *objective* in order that his testimony, if offered, will convince the jury of petitioner's actual mental condition." (246 Cal.App.2d at p. 86; italics added.)

Nevertheless it is noteworthy that numerous courts and commentators have criticized the willingness of many experts to become the "hired champions" of one side or the other and the consequent reduction of many trials to a "battle of experts." (See e.g., *Winans* v. *New York & E. R. R.* (1859) 62 (21 How.) U.S. 88, 100-101 [16 L.Ed. 68, 70-71]; *Estate of Dolbeer* (1906) 149 Cal. 227, 243 [86 P. 695]; *Lowder* v. *Standard Auto Parts Co.* (1939) 136 Neb. 747 [287 N.W. 211, 215], conc. & dis. opn., Johnsen, J.; *Opp* v. *Pryor* (1920) 294 Ill. 538 [128 N.E. 580, 583]; McCormick, Evidence (2d ed. 1972) Expert Testimony, § 17, pp. 37-41; 2 Wigmore, Evidence (3d ed. 1940) Experiential Capacity, § 563, pp. 644-656; Witkin, Cal. Evidence (2d ed. 1966) The Opinion Rule, § 425, p. 385; Myers, *"The Battle of the Experts:" A New Approach to an Old Problem in Medical Testimony* (1965) 44 Neb.L.Rev. 539; McCoid, *Opinion Evidence and Expert Witnesses* (1955) 2 UCLA L.Rev. 356, 367-368; Morgan, *Suggested Remedy for Obstructions to Expert Testimony by Rules of Evidence* (1943) 10 U.Chi.L.Rev. 285; Elliott & Spillman, *Medical Testimony in Personal Injury Cases* (1935) 2 Law & Contemp. Prob. 466, 467; Hand, *Historical and Practical Considerations Regarding Expert Testimony* (1901) 15 Harv.L.Rev. 40, 53; Comment, *The Proposed Expert Evidence Bill* (1915) 3 Cal.L.Rev. 216; Farley, *Court Survey* (1958) 33 State Bar J. 651, 654-655; Runkle, *The Expert Medical Testimony Project* (1957) 32 L.A. Bar Bul. 307; Peck, *A Successful New Plan: Impartial Medical Testimony* (1956) 42 A.B.A.J. 931; Mundo, *Expert Witnesses as Officers of the Court* (1935) 10 State Bar J. 113, 113-114.) One doctor who made frequent court appearances as an expert witness gave a particularly negative description of the medical experts who testify in personal injury actions: "[t]hey are of two hostile camps, and prepared to attempt, under solemn oath, to uphold opinions diametrically opposed, yet supposedly derived from a single series of facts and observations." (Dr. J. W. Courtney, Address to the graduating class of the Harvard Medical School (1915), quoted in Myers, *"The Battle of the Experts:" A New Approach to an Old Problem in Medical Testimony* (1965) 44 Neb.L.Rev. 539, 541, and Elliott & Spillman, *Medical Testimony in Personal Injury Cases* (1935) 2 Law & Contemp. Prob. 466.)