[No. C043143. Third Dist. May 13, 2003.]

GOLFLAND ENTERTAINMENT CENTERS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
ARLYN NUNEZ et al., Real Parties in Interest.

**COUNSEL**

Laplante & Spinelli, John M. Laplante and M. Teresa Abad Levenfeld for Petitioner.

No appearance for Respondent.

Drivon & Tabak, Stewart M. Tabak; Law Offices of Lawrence M. Knapp and Lawrence M. Knapp for Real Parties in Interest.

**OPINION**

**SIMS, Acting P. J.**—In August 2000, when he was 10 years old, David Nunez almost died in an accident that occurred while he was riding a "bumper boat" on the premises of defendant and petitioner Golfland Entertainment Centers, Inc. David's mother, Arlyn Nunez, individually and as guardian ad litem for David and his siblings, filed a lawsuit alleging personal injury and emotional distress. Dale Baumbach, Ph.D., a neuropsychologist, concluded the boy suffered brain damage due to oxygen deprivation during the near-drowning.[1] In the course of discovery, petitioner demanded that David submit to a mental examination by a neuropsychologist of its choosing, Randall Epperson, Ph.D. (Code Civ. Proc., § 2032.)[2]

Because the parties could not agree on the ground rules for Dr. Epperson's examination, petitioner filed a motion to compel compliance with its demand. Ultimately, on December 9, 2002, the trial court entered an order providing: (1) Dr. Epperson "may take a history from DAVID NUNEZ, but may not require or elicit narrative responses"; (2) "Plaintiffs' counsel as well as [petitioner's] counsel may attend the examination, but no third parties, including relatives, counsel or persons other than the neuropsychologist and his staff may be within eyesight of DAVID NUNEZ during the examination. Additionally, the [petitioner] shall provide a court reporter to take down only [David's] oral responses during the examination"; (3) there shall be no physically invasive testing; and (4) plaintiffs' counsel shall receive a copy of Dr. Epperson's report.

In this writ proceeding, petitioner challenges only the first two parts of the trial court order. We issued a *Palma* letter (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893]),

---

[1] The record before us does not disclose whether Dr. Baumbach was a treating physician or an expert retained by plaintiff.

[2] Undesignated section references are to the Code of Civil Procedure.

received opposition from plaintiffs, and stayed further proceedings in the trial court pending this decision. Consistent with the controlling statutory and case law, and in light of certain concessions by the plaintiffs, we shall grant writ relief barring the presence of counsel and the court reporter, and requiring that the entire examination be recorded on audiotape. We shall direct the trial court to modify language in that part of the order that prohibited Dr. Epperson from eliciting narrative responses from David.

DISCUSSION

A. *The Order Prohibiting Narrative Responses Requires Modification*

1. *Background*

The trial court order provided: "The neuropsychologist may take a history from DAVID NUNEZ, but may not require or elicit narrative responses from DAVID NUNEZ."

Petitioner objects to this part of the order on the ground that it will prevent its expert from conducting a valid mental examination, deprive Dr. Epperson of the same examination opportunity enjoyed by Dr. Baumbach, and give plaintiffs an unfair litigation advantage. Under the present facts, we conclude this part of the order must be modified in a manner we shall explain.

The background of the order is as follows:

Dr. Baumbach initially examined David on October 24, 2001; David was seen with his mother, and both he and his mother were interviewed. Dr. Baumbach then administered various tests to David on October 24 and 31, 2001, and prepared a written report of his findings. By the time it made the demand for examination by Dr. Epperson almost a year later, petitioner also had transcripts of depositions of the plaintiffs, other parties, and witnesses to the accident; David's medical records; and incident reports.

Upon petitioner's demand for examination, plaintiffs' counsel advised defense counsel: "I will not permit . . . Dr. Epperson to obtain a narrative history from either David or his mother" because both had already been deposed by defense counsel.

Dr. Epperson's declaration supporting petitioner's motion explained that he had already seen most of the records in the case, but that interviewing David was "necessary to rule out alternative etiologies (preexisting cognitive impairment or emotional problems, or problems caused by concurrent factors unrelated to the accident)." Also, the interview would identify the

current symptoms or complaints, and allow selection of tests to address those symptoms. Dr. Epperson expected the interview to take about 90 minutes and testing to last the rest of the day.

At the hearing on the motion to compel, defense counsel conceded that David had already given his recollection of the accident in his deposition. Thus, David's recollection was readily available to Dr. Epperson. Defense counsel also admitted that David had related the accident twice before, apparently referring to (1) David's deposition, and (2) his interview with Dr. Baumbach. In explaining its ruling on this issue, the trial court stated: "I'm not going to put this child in a position where in a narrative form the child is going to be asked to spew out information that the child has already given previously on two occasions."

However, the court acknowledged that Dr. Epperson retained significant latitude in performing the interview. As the court explained: "I am not ruling that the physician [*sic*] cannot ask the child questions based on other testimony that he's given. I mean, obviously there would be no exam of this nature otherwise." "It is just what I am precluding is those broad, open statements to a child where a child inevitably is going to say something different than the child said before." The court confirmed that Dr. Epperson would be allowed to ask David about, for example, the incident, his medical history and his education, so long as the questions were following up on or confirming the information David had already given in other contexts. The court also made it clear that Dr. Epperson was free to pose questions that he felt needed to be asked of David, but that had *not* been asked previously.

As is evident from the record and its ruling on this issue, the court also explained: "I am trying to walk . . . a fine line here between both of you to provide the discovery that's necessary for the defense and at the same time making sure that your minor plaintiff receives some form of protection during the course of this process.

"And that's why I have made the ruling that I have made. The child can be asked specific questions. The child is not to be asked to provide a narrative. I appreciate that if [Dr. Epperson] can't ask any questions, it would be pretty useless."

### 2. *Analysis*

Section 2032, subdivision (a) provides: "Any party may obtain discovery . . . by means of a physical or mental examination of (1) a party to the action . . . in any action in which the mental or physical condition . . . of

that party . . . is in controversy in the action." A party seeking a *mental* examination must obtain leave of court, which the court shall grant "only for good cause shown." (§ 2032, subd. (d).) If a party required to submit to examination fails to do so, "the court . . . may make those orders that are just . . . ." (§ 2032, subd. (f).) Subdivision (f) expressly recognizes the general rule that trial courts have "wide" discretion in granting or denying discovery. (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 378 [15 Cal.Rptr. 90, 364 P.2d 266].)

■ Even given the trial court's "broad" discretion, we see three serious problems with the trial court's order.

First, by forbidding the elicitation of "narrative" responses, the trial court adopted a vague term that would doubtless lead to further argument over the permissible scope of the examination. What after all is a "narrative" answer to a question?

Second, the trial court's preclusion of "narrative" answers did not remedy the problem at which the order was directed. As is clear from a reading of the record as a whole, the trial court was concerned with protecting David from having to give repetitive answers to questions that had been asked him twice previously. Precluding a "narrative" answer does not remedy the perceived evil. Rather, preclusion of "narrative" answers precludes a *kind* of answer without reference to whether a question was asked previously or not. By precluding "narrative" answers, the trial court therefore adopted an imprecise and unworkable remedy for the evil it perceived.

The third problem with the trial court's order is that it prohibited Dr. Epperson from asking questions that were necessary to the formation of an opinion about the diagnosis and prognosis of David's condition. A reading of the record reflects a legitimate concern by the trial court that David not be made to recount the facts and circumstances of the accident itself where he had done so at least twice previously. This would amount to giving the petitioner a third deposition as to the facts and circumstances of the accident which, in the view of the trial court, was unnecessary. This was a legitimate exercise of the trial court's discretion. However, the trial court's order was much broader and prohibited Dr. Epperson from asking questions about David's medical condition, his symptoms, and his current conditions in the event the question could be deemed to elicit a "narrative" answer. This was improper. As our Supreme Court has said in a slightly different context, " ' "The basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject." ' [Citation.]"

(*Edwards v. Superior Court* (1976) 16 Cal.3d 905, 910 [130 Cal.Rptr. 14, 549 P.2d 846].) Although the trial court could prohibit Dr. Epperson from eliciting yet a third version of the facts and circumstances of the accident, the trial court could not properly limit Dr. Epperson's questioning of plaintiff with respect to other matters affecting plaintiff's psychiatric condition, such as symptoms, perceptions, relationships, et cetera. To the extent the trial court's order, precluding questions eliciting "narrative" responses sought to accomplish this end, the trial court abused its discretion. We shall remand the case to the trial court with a direction to vacate its order precluding questions eliciting "narrative" responses and to replace it with the following order: "Dr. Epperson may take a history from David Nunez, but Dr. Epperson shall not ask him questions regarding the facts and circumstances of the accident to the extent those matters were already stated by David Nunez in his deposition or in his interview with Dr. Baumbach."

We add that we do not suggest a limitation such as that imposed by the trial court on the examining expert (even as modified by this court) is a preferred procedure that should be used by trial courts. We hold only that the trial court's order, as modified, is within the "broad" discretion of the trial court. (*Greyhound Corp. v. Superior Court, supra,* 56 Cal.2d 355, 378.)

## B. *Counsel Shall Not Be Present at David's Examination*

The trial court's order also provided: "Plaintiffs' counsel as well as defense counsel may attend the examination, but no third parties, including relatives, counsel or persons other than the neuropsychologist and his staff may be within eyesight of DAVID NUNEZ during the examination."[3] Petitioner contends that allowing plaintiffs' counsel to attend the examination would "contaminate" Dr. Epperson's findings and undermine the reliability of his opinion.

Section 2032, subdivision (g)(2), which governs the examination involved here, provides: "The examiner and examinee shall have the right to record a *mental* examination on audio tape. However, nothing in this article shall be construed to alter, amend, or affect existing case law with respect to the presence of the attorney for the examinee or other persons during the examination by agreement or court order." (Italics added.) In contrast, subdivision (g)(1) of the same section provides: "The attorney for the examinee, or for a party producing the examinee, or that attorney's representative, shall be permitted to attend and observe any *physical* examination conducted for discovery purposes . . . ." (Italics added.)

---

[3]The trial court allowed defense counsel to be present at the examination even after defense counsel made it clear at the hearing that he did not want to be present.

The express authorization for the attorney's presence in subdivision (g)(1) (dealing with a *physical* examination) and its omission in subdivision (g)(2) of section 2032 (dealing with a *mental* examination) strongly indicates the Legislature's intent that counsel ordinarily should *not* be present at a mental examination. "It is a well-settled principle of statutory construction that ' " '[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " ' [Citation.]" (*Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1166 [26 Cal.Rptr.2d 217, 864 P.2d 488].)

Moreover, the "existing case law" referenced in section 2032, subdivision (g)(2) makes it clear that, in most cases, counsel should not be permitted to attend a mental examination, even though trial courts retain the discretion to allow counsel's presence in exceptional cases. In *Edwards v. Superior Court, supra,* 16 Cal.3d 905, the Supreme Court concluded that a plaintiff in a personal injury action may not insist upon the presence of her or his attorney at an examination conducted by defendant's psychiatrist. (*Id.* at p. 907.)

The *Edwards* court explained: "Unlike a physical examination, which consists of little or no analysis of the examinee's mental processes, a psychiatric examination is almost wholly devoted to a careful probing of the examinee's psyche for the purpose of forming an accurate picture of his mental condition." (*Edwards v. Superior Court, supra,* 16 Cal.3d 905, 910.) It noted that the " ' "basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject." ' [Citation.]" (*Ibid.*) Also, the presence of counsel " 'may largely negate the value of the examination. Surely the presence and participation of counsel would hinder the establishment of the rapport that is so necessary in a psychiatric examination. [Citation.]' " (*Ibid.*) "[A] psychiatric examination of a party in a *civil* case should ordinarily be conducted without counsel if the examination is to remain an effective and meaningful device for ascertaining the truth." (*Ibid.*)

Section 2032 does not differentiate between psychiatric and psychological examinations, but only between physical and mental examinations. The plaintiffs have conceded that "the rapport that develops between an examiner/examinee is crucial to the testing process . . . ." Accordingly, the *Edwards* rule should apply to the examination at issue here.

The Supreme Court declined to reconsider *Edwards* in *Vinson v. Superior Court* (1987) 43 Cal.3d 833, 845 [239 Cal.Rptr. 292, 740 P.2d 404].

██ However, *Vinson* emphasized "that *Edwards* should be viewed as standing for the proposition that the presence of an attorney is not *required* during a mental examination. In light of their broad discretion in discovery matters (see generally *Greyhound Corp. v. Superior Court*[, *supra,*] 56 Cal.2d 355), trial courts retain the power to permit the presence of counsel or to take other prophylactic measures *when needed.*" (*Vinson v. Superior Court, supra,* at p. 846, italics added.)

██ The record here lacks evidence demonstrating that the presence of plaintiffs' counsel is necessary to protect the rights of the plaintiffs generally or David specifically, and therefore fails to justify an exception to the standard rule barring counsel. All indications are that plaintiffs' interests can be adequately protected without having their attorney present; here, as in *Vinson,* the trial court order and our decision specify the conditions and scope of the mental examination; "[w]e must assume, absent evidence to the contrary, that the examiner will proceed in an ethical manner, adhering to these constraints"[4] ; and the entire examination will be audiotaped (as discussed in the next part of this opinion). (*Vinson v. Superior Court, supra,* 43 Cal.3d 833, 846.)

We also note that the plaintiffs impliedly concede their counsel's presence is unnecessary and that the presence of David's mother will suffice. Their opposition filed here "does not dispute that the order could stand some modification to achieve the legitimate objectives of the parties in the discovery process. It is essential for the protection of plaintiff's [*sic*] interest, however, . . . that the order *preserve* the following *minimum* protections: [¶] . . . [¶]

"[*E*]*ither* his lawyer, his mother, *or* both of them should be permitted to observe the examination . . . ." (Italics added.) Petitioner does not challenge the mother's presence.[5] Plaintiffs' concession conforms to the legislative intent that ordinarily mental examinations should be conducted without the presence of the examinee's counsel.

---

[4]Plaintiffs' counsel has admitted that he knows Dr. Epperson " 'to be honorable, qualified and reputable.' "

[5]The trial court order contemplates that David's mother will be attending the examination, stating "no third parties, *including relatives*, . . . other than the neuropsychologist and his staff may be within eyesight of DAVID NUNEZ during the examination." Since David's mother is a plaintiff, she is not a "third part[y]." Petitioner does not contest that portion of the order in this writ proceeding. Also, petitioner's motion to compel implied that David's mother would be allowed to attend the examination, since petitioner offered to pay reasonable mileage and meal expenses "for David and his mother for the day."

It also should be noted that prior to the filing of the motion to compel, when counsel for the parties were exchanging letters in an attempt to resolve these disputes between themselves, plaintiffs' counsel never sought to attend David's examination with Dr. Epperson, or to have

Under the applicable statute and case law, and based on this record, the trial court's discretion as to this issue was more limited than as to the issue addressed in part A of the Discussion. We shall vacate that part of the court's order permitting counsel to attend David's examination, finding that order to have been an abuse of discretion under the correct legal principles as applied to these facts. (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297-1298 [255 Cal.Rptr. 704] [question is whether discretion was exercised in conformity with the pertinent legal principles and whether their application to the facts of the case transgressed the confines of the discretion conferred by law]; *Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 [228 Cal.Rptr. 190, 721 P.2d 71] [discretion must be exercised in conformity with the spirit of the law]; *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642] [exercise of discretion upheld if it was based on a reasoned judgment and it complied with the applicable legal principles and policies]; *Bailey v. Taaffe* (1866) 29 Cal. 422, 424 [judicial discretion is "guided and controlled in its exercise by fixed legal principles. It is . . . a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates"].)

■ Despite plaintiffs' concession that David's mother could protect David's rights, plaintiffs' opposition attempts to justify the order permitting the presence of counsel by arguing this case does not involve solely a *mental* examination, but a "hybrid" mental and *physical* examination. In turn, they seek to rely on section 2032, subdivision (g)(1), providing that the examinee's attorney (or the attorney's representative) "shall" be permitted to attend and observe any physical examination.

However, plaintiffs' argument regarding the nature of Dr. Epperson's examination directly contradicts the position they took in the trial court, where they admitted "the examiner is a psychologist, not a medical doctor, and as such [it] should more properly be labeled a 'psychological' or 'mental' examination." At no time in the trial court did plaintiffs assert that petitioner was seeking to have Dr. Epperson perform a hybrid mental/physical examination. Hence, we deem the plaintiffs foreclosed from raising that contention here in the first instance. (See *Porter v. Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1291 [51 Cal.Rptr.2d 338]; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468 [33 Cal.Rptr.2d 217].)

a representative attend. Rather, plaintiffs' counsel (like his adversary) contemplated that only David and his mother would attend; plaintiffs' counsel also stated he planned to be out of the country on the date that had been set for the examination.

## C. *The Entire Examination Shall Be Recorded on Audio Tape, and No Court Reporter Shall Be Present*

The last portion of the trial court's order at issue requires the provision of "a court reporter to take down only [David's] oral responses during the examination." Both petitioner and plaintiffs agree that a partial recording of only David's responses, removed from context, would be useless. Further, petitioner contends that permitting a court reporter to attend the examination would, like the presence of counsel, interfere with the necessary building of rapport between David and Dr. Epperson. In this writ proceeding, plaintiffs do not dispute the last point; they seek only a recording of the entire examination and take no position on how that should be accomplished. (In the trial court, plaintiffs sought to have their attorney's representative record the entire examination on audiotape.)

The mental examination statute, section 2032, subdivision (g)(2), states in relevant part: "The examiner and examinee shall have the right to record a mental examination on audio tape." At the hearing, the trial court explained that it was ordering the recording of David's statements, but not Dr. Epperson's, because "[t]hat's what the Code says, by my reading." The trial court's reading of the Code was incorrect. Nothing in the applicable statute suggests that the right of the examiner or examinee is limited to recording only selected parts of the examination.[6]

Further, recording only the examinee's responses would defeat the main purposes of the audiotaping, which are to ensure that the examiner does not overstep the bounds set by the court for the mental examination, that the context of the responses can be judged for purposes of trial, that the examinee's interests are protected (especially since the examinee's counsel ordinarily will not be present), and that any evidence of abuse can be presented to the court. (See *Vinson v. Superior Court, supra,* 43 Cal.3d 833, 846.)

Finally, we conclude that no court reporter should be present at the examination and that it should be recorded by audiotape only. The differences between the physical examination statute (allowing the presence of counsel or counsel's representative to record the exam by audio taping *or*

---

[6]It is possible that the trial court mistakenly relied on section 2032, subdivision (g)(1), pertaining only to *physical* examinations, which provides for recording, "stenographically or by audiotape any words spoken *to or by* the examinee during any phase of the examination." (Italics added.) Perhaps the trial court was misled by the plaintiffs' citation to that provision. Whatever the case, we have no occasion here to consider the proper interpretation of subdivision (g)(1).

*stenography* as matter of right) (§ 2032, subd. (g)(1)) and the mental examination statute (permitting the presence of counsel/counsel's representative only by agreement or court order, and providing *only* for a right of the examiner or examinee to *audio tape* the exam) (§ 2032, subd. (g)(2)), indicate the Legislature's intent that court reporters should not attend mental examinations and that such examinations should be audiotaped. "The [Discovery] Act permits mental examinations to be recorded only by means of 'audio tape' . . . ." (*Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 492 [122 Cal.Rptr.2d 673]; see § 1858; *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1054 [80 Cal.Rptr.2d 828, 968 P.2d 539]; *In re Rudy L.* (1994) 29 Cal.App.4th 1007, 1011 [34 Cal.Rptr.2d 864].)

Since the applicable law circumscribed the scope of the trial court's discretion on these matters, we conclude the court abused its discretion under the correct legal principles, as applied to these facts, when it ordered a partial recording of the examination to be performed by a court reporter. (*City of Sacramento v. Drew, supra,* 207 Cal.App.3d 1287, 1297-1298; *Bettencourt v. Los Rios Community College Dist., supra,* 42 Cal.3d 270, 275; *Bullis v. Security Pac. Nat. Bank, supra,* 21 Cal.3d 801, 815; *Bailey v. Taaffe, supra,* 29 Cal. 422, 424.)

It is advisable to make Dr. Epperson, as the health care practitioner conducting the examination, responsible for audiotaping it in its entirety, rather than burdening David or his mother with that task. Having Dr. Epperson do the taping is more likely to avoid disruption of the examination, and his office is almost surely properly equipped to perform this task, which is a common feature of psychological practice.

Having complied with the procedural requirements of *Palma v. U.S. Industrial Fasterners, Inc., supra,* 36 Cal.3d 171, we shall issue a peremptory writ in the first instance. However, despite our decision, the parties remain free to stipulate to other procedures for this mental examination as they see fit.[7]

---

[7]Plaintiffs' opposition objects to the new declaration of Dr. Epperson (and the exhibits attached to it) filed as exhibit 11 to petitioner's writ petition, on the ground those documents were not filed in the trial court. We sustain the objection and have not considered the new declaration or attachments. (*People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1173-1174, fn. 5 [17 Cal.Rptr.2d 815, 847 P.2d 1031] [declarations not presented to trial court]; *Stevens v. Superior Court* (1997) 52 Cal.App.4th 55, 58, fn. 3 [60 Cal.Rptr.2d 397] [same]; *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 607, fn. 13 [89 Cal.Rptr.2d 370] [exhibits not before trial court].) Plaintiffs are not blameless, however. Their opposition made

## DISPOSITION

Let a peremptory writ of mandate issue, directing the trial court to vacate those portions of its December 9, 2002, order providing for the presence of counsel and a court reporter at the examination, and for the stenographic recording of only David's oral responses, and commanding the trial court to enter a new and different order providing that neither counsel nor a court reporter shall be present at the examination, and that the entire examination shall be recorded on audio tape by Dr. Epperson. The court shall also modify, in the manner stated in the opinion, that portion of its December 9, 2002, order prohibiting Dr. Epperson from eliciting narrative responses from David Nunez. In all other respects, the trial court's December 9, 2002, order is undisturbed. The stay of proceedings in the trial court is dissolved. Petitioner shall recover its costs.

Raye, J., and Kolkey, J., concurred.

---

the claim, unsupported by any citation to the record, that David is "profoundly disabled." Given the lack of record support, we granted petitioner leave to file a reply disputing that assertion. Plaintiffs then objected to our consideration of records supporting the reply that were not presented to the trial court, even though it was plaintiffs' failure to provide support for their assertion that caused us to grant leave to file the reply in the first place. In any event, we found it unnecessary to consider the reply or documents attached to it, and thus the reply has not affected the outcome of our decision.