[No. B226902. Second Dist., Div. Four. Nov. 9, 2010.]

TOYOTA MOTOR SALES, U.S.A., INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
STEVEN BRAUN, Real Party in Interest.

**COUNSEL**

Morgan, Lewis & Bockius, Thomas M. Peterson, Amy M. Spicer, Clifford D. Sethness, Larry M. Lawrence and Robert Jon Hendricks for Petitioners.

No appearance for Respondent.

The Cifarelli Law Firm, Dawn M. Smith, Grace H. Chang and Thomas A. Cifarelli for Real Party in Interest.

OPINION

**WILLHITE, J.**—Plaintiff Steven Braun (Braun) sued defendants Toyota Motor Sales, U.S.A., Inc. (Toyota), and Randall Bauer (Bauer) for, among other things, gender discrimination and sexual harassment under the California Fair Employment and Housing Act (Gov. Code, § 12940 et seq.), and for common law claims of defamation, constructive discharge, and intentional and negligent infliction of emotional distress. In support of the claims, Braun alleged that while working for Toyota as a manager in various departments, he was sexually harassed by Bauer, who was a corporate manager to whom Braun reported. After Braun spurned Bauer's advances, according to Braun, Bauer and Toyota retaliated against him by issuing false reprimands and other adverse employment actions forcing him to leave the company.

In the trial court, Toyota and Bauer moved to compel Braun to submit to an independent psychiatric examination (Code Civ. Proc., § 2032.310). The trial court granted the motion, but permitted Braun's attorney to be present in an adjoining room during the examination so as to monitor it. Toyota and Bauer filed a petition for writ of mandate in this court to compel the trial court to set aside the portion of the order permitting Braun's attorney's presence in an adjoining room and his contemporaneous monitoring of the examination. Toyota contends that allowing the presence of counsel was error because the experts retained for the exam believed counsel's presence would interfere with the validity of the exam and Braun made no evidentiary showing that his counsel's presence in an adjoining room was necessary to protect his privacy.

We issued an alternative writ directing the trial court to set aside the portion of its order permitting Braun's counsel's attendance at the examination or to show cause why we should not issue the writ requested. The trial court declined to take action, and we have received Braun's return to the petition and the reply by Toyota and Bauer. We now issue the writ.

## BACKGROUND

In response to interrogatories, Braun stated that he has sought mental health treatment, counseling and therapy due to stress and anxiety from the alleged harassment in his employment and has been examined by mental health practitioners of his own choice. He also stated in his interrogatory responses (and in testimony in an arbitration proceeding concerning his claims) that he continues to suffer emotional distress from the harassment.

Contending that Braun placed his mental health at issue, Toyota[1] sought an independent psychiatric examination under Code of Civil Procedure section 2032.310 et seq. Braun refused to stipulate to an examination and Toyota moved to compel. Toyota identified Dr. Charles Hinkin to administer eight written psychological tests over an eight-hour period and Dr. Saul Faerstein to conduct a personal one-on-one session for three to four hours; the experts' extensive curriculum vitae were attached as exhibits to the motion.

In opposition to the motion to compel, Braun demanded several accommodations, including that the examination be audio-recorded (as is his right under Code Civ. Proc., § 2032.530, subd. (a)) and that his attorney be present at the examination location, to contemporaneously listen to and monitor the examination. Braun acknowledged that although California law (in particular *Edwards v. Superior Court* (1976) 16 Cal.3d 905, 911 [130 Cal.Rptr. 14, 549 P.2d 846]) does not generally permit the attendance of counsel at the examination itself, he contended nonetheless that "based upon the circumstances" (which were not specified), the court should protect Braun's privacy rights during the examination by allowing his counsel to be present nearby and to listen as the examination progressed. Braun relied on *Vinson v. Superior Court* (1987) 43 Cal.3d 833 [239 Cal.Rptr. 292, 740 P.2d 404] (*Vinson*) which, although following *Edwards*, pointed out that "when the circumstances warrant it, the courts may fashion some means of protecting an examinee from intrusive or offensive probing." (*Id.* at p. 845.)

In reply, Toyota objected to the demand that Braun's attorney be permitted to monitor and listen to the examination, because Toyota's experts believed that counsel's presence would interfere with the validity of the exam, that the experts might refuse to perform the examination under such circumstances, and that Bauer made no evidentiary showing that his counsel's presence in an adjoining room was necessary to protect his privacy. Toyota submitted a declaration from Dr. Faerstein, who stated that the proposed diagnostic tests would assist in his psychiatric evaluation of Braun so that he would be able to testify with the required degree of medical certainty as to the nature, cause, and scope of Braun's emotional damages. He also declared that his office could not accommodate a request for a third person to remotely view or listen to the exam, but that he could record the exam.

At the hearing on the motion on August 12, 2010, before argument, the trial court denied the motion without prejudice and suggested that the parties meet and confer to reach an agreement.[2] The court then engaged in a "meet

---

[1] In our discussion, we use Toyota to refer collectively to Toyota and Bauer.

[2] We note that in addition to ruling on the motion to compel that day, the court also ruled on summary judgment motions brought by both Toyota and Braun, and a separate discovery order. A substantial amount of its attention was devoted to these motions.

and confer" proceeding with the attorneys. Braun's counsel suggested that he be present in an adjoining room during the examination to engage in "passive auditory monitoring" of the examination. He stated that "since 1993" he had been audiotaping and contemporaneously listening to such examinations from another room and claimed "that's always done." Toyota's counsel objected to the presence of Braun's attorney at the location of the examination, because of the danger that Braun might receive advice from his attorney during breaks and thus violate the integrity of the examination. The court agreed to make an order prohibiting communication about "the substance of the questioning," but not prohibiting them from talking during breaks: "Just like any witness who testifies in court, . . . lawyers shouldn't influence what's being said, but certainly [lawyer and client] can talk to each other."

In discussing the tests to be administered by Dr. Hinkin, Braun's counsel objected to the proposed number of diagnostic tests to be performed by Dr. Hinkin and the proposed length of the testing and in-person interview by Dr. Faerstein. He expressed his concern as follows: "What I want to make sure before we leave here is that counsel is not going to use this opportunity . . . to redepose plaintiff when they had the opportunity to videotape him [at his deposition and did not]." Toyota's attorney argued that whereas Toyota had provided an expert declaration explaining the need for the tests and interview, Braun had provided no evidence that the proposed tests or interview were unnecessary or unduly burdensome. The court agreed to order seven hours for diagnostic testing and four hours for interview. The place of the testing and interview would be Dr. Faerstein's office.

After further discussion, Toyota's counsel stated that "pursuant to the court's order, I think we would have an agreement." Based on a request by Braun's attorney, the court also ordered that the exam take place on a Saturday.[3]

On August 17, 2010, Toyota filed an ex parte motion to modify the order, arguing that California case law does not permit the presence of an attorney at an independent medical examination except in rare and unusual circumstances, which Braun had not presented. Toyota also submitted the declarations of Drs. Hinkin and Faerstein, who concurred that the presence of an attorney at the examination, even in a remote location, could interfere with the relationship between the examiner and plaintiff and negate the value of the exam. Dr. Faerstein stated he had serious concerns about proceeding with

---

[3] Toyota points out that there is some confusion about the court's order. Based on the transcript, it appears that the court intended to make the orders and set the parameters as described above. Toyota's notice of ruling states that the court granted the motion to compel in part and denied it in part, and sets forth the court's orders. However, the filed written order signed by the judge, denies the motion to compel without prejudice.

the examination and "would object" to conducting an exam with counsel present and again noted that his office was not equipped to allow a third party to remotely view or observe the exam. Both doctors also stated they were not available on a Saturday. Braun opposed the ex parte motion, arguing that it was brought in bad faith.

The trial court entertained the ex parte application on its merits, and modified the order only so as to specify that the exam take place on a weekday. In all other respects the ex parte was denied.[4]

As we have noted, Toyota petitioned for a writ of mandate in this court seeking to set aside the portion of the trial court's order permitting Braun's counsel to be present at an adjacent location to monitor the examination. We issued an alternative writ and order to show cause.

## DISCUSSION

We conclude that the trial court erred in permitting Braun's attorney to attend the psychiatric examination (though not in the examination room) so as to listen to and monitor the examination.

█ In *Edwards v. Superior Court, supra,* 16 Cal.3d 905, the California Supreme Court held that a plaintiff could not insist on an attorney's presence at a psychiatric examination. The court explained that unlike a physical examination, which is not focused on the examinee's mental processes, a mental exam is almost solely devoted to ascertaining those processes, "for the purpose of forming an accurate picture of his mental condition." (16 Cal.3d at p. 910.) The personal interview (" ' "[t]he basic tool of psychiatric study" ' ") requires rapport between the examiner and examinee: " '[s]urely the presence and participation of counsel would hinder the establishment of the rapport that is so necessary in a psychiatric examination. [Citation.]' " (*Ibid.*)

█ In *Vinson, supra,* 43 Cal.3d at pages 845–846, the court declined to reconsider *Edwards,* but "emphasize[d] . . . that *Edwards* should be viewed as standing for the proposition that the presence of an attorney is not *required* during a mental examination. In light of their broad discretion in discovery matters [citation], trial courts retain the power to permit the presence of counsel or to take other prophylactic measures when needed." (See also *Golfland Entertainment Centers, Inc. v. Superior Court* (2003) 108 Cal.App.4th 739, 747 [133 Cal.Rptr.2d 828] ["in most cases, counsel should not be permitted to attend a mental examination, even though trial courts retain the discretion to allow counsel's presence in exceptional cases"].)

---

[4] The trial court did not address plaintiff's argument that the ex parte motion was an improper motion for reconsideration.

Here, the "prophylactic measure[]" (*Vinson, supra*, 43 Cal.3d at p. 846) ordered by the court permits Braun's attorney to be present in such a way as to independently monitor the examination, though not be personally present in the examination room. Contrary to *Vinson*, however, there has been no showing of "need" for this measure. The examination will be audiotaped and Braun's attorney will be provided with a copy. The limits of the examination have been set and "[w]e must assume, absent evidence to the contrary, that the examiner will proceed in an ethical manner, adhering to these constraints." (*Vinson, supra*, 43 Cal.3d at p. 846.)

On the other hand, Toyota has presented evidence that contemporaneous monitoring of the examination by Braun's attorney might compromise the integrity of the examination. As stated by Dr. Faerstein, counsel's presence in another room would interfere with Dr. Faerstein's ability to establish the rapport with Braun necessary for the examination, especially given Braun's ability to speak with his attorney in person at breaks (though not on the subject of the examination), and might well influence Braun to answer questions in a particular way so as to please his attorney whom he knows is contemporaneously monitoring the examination. Dr. Hinkin echoed these concerns with regard to his diagnostic testing.

Braun argues that the presence of his attorney to monitor the examination is necessary "[i]n order to protect [him] from harassing and duplicative questions, improper invasion of attorney-client privilege communications, or other inappropriate inquiries by the defense experts on the substance of his claims." However, as we have mentioned, absent evidence to the contrary (and there is none), it must be presumed that the examiners will act appropriately. (*Vinson, supra*, 43 Cal.3d at p. 846.) Moreover, short of interrupting the examination to pose objections—the type of disruptive conduct that the general rule against the presence of attorneys is designed to prevent—we fail to see how monitoring the examination will in any way serve to protect Braun against such supposed abuses. We note, too, that the court ordered Braun and his attorney not to discuss the substance of the examination. Thus, the presence of Braun's attorney cannot be described as necessary to give him advice at breaks in the examination so as to minimize the speculative dangers Braun describes.

We recognize the broad discretion of the trial court in discovery matters. We also recognize the difficulty the trial court faced in dealing not only with the motion to compel but also with other law and motion matters at the same hearing, and dealing with a later ex parte proceeding regarding the psychiatric examination, which the court entertained on the merits. (See fn. 2, *ante*.) However, Braun demonstrated no legitimate need for his attorney to attend the psychiatric examination so as to monitor it from a separate room.

Toyota produced evidence that such monitoring might compromise the integrity of the examination. We therefore conclude that the trial court abused its discretion in permitting Braun's attorney to contemporaneously monitor the examination.

## DISPOSITION

Let a peremptory writ of mandate issue, directing the trial court to vacate that portion of its ruling on Toyota's motion to compel an independent psychiatric examination that permits Braun's counsel to attend the examination and monitor the examination from a separate room. Petitioners shall recover their costs.

Epstein, P. J., and Manella, J., concurred.