281 N.J. Super. 605 (1995)
658 A.2d 1335
CAROL STOUGHTON, PLAINTIFF,
v.
B.P.O.E. # 2151 (BRICK TWSP ELKS), VINCENT DRISCOLL AND AGNES RUMBOLO, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided February 21, 1995.
*606 Steven L. Kessel, for plaintiff (Drazin & Warshaw, P.C., attorneys).
Mark S. Hochman, for defendants (Gertler & Hanna, P.C., attorneys).

OPINION
PISCAL, J.S.C.
Defendant moves to dismiss the plaintiff's complaint for failure to comply with a Case Management Order dated January 19, 1995, by James P. Courtney, Jr., J.S.C., requiring the psychiatric examination of plaintiff be completed by January 30, 1995.
The complaint alleges an assault and battery at the Brick Township Elks Club upon the plaintiff Carol Stoughton on July 12, 1991, by Agnes Rumbolo.
Plaintiff consulted Dr. James A. Huddy, a psychologist between August 1991 and April 1993. Plaintiff was deposed on November 23, 1993 and stated she had received no psychological therapy or treatment since April 21, 1993. Then on December 5, 1994 a report was submitted to the defense indicating that plaintiff began receiving psychotherapy again, starting March 1994. Defense counsel immediately sought an examination by a psychiatrist, Dr. Motley, but plaintiff refused to submit to such examination without her attorney in attendance or a tape recorder. Defendant refused for reasons stated in the letter of the proposed examining physician.
The issue to be determined here is whether a psychiatric examination to be conducted by a licensed medical expert, at the request of the defense, can be conducted by the expert without the presence of plaintiff's attorney, a tape recording device or any third party being present.
*607 The starting point for our inquiry must be the discovery rule, R. 4:19. Note that an order to submit to a mental or physical examination is made "only on motion for good cause shown, supported by affidavit stating the party's refusal to submit to an examination upon the movant's request...."
Thus, in the great majority of cases, the plaintiff is requested to be examined by a physician of defendant's choosing and the appointment is kept. Reports could then be exchanged pursuant to R. 4:17-1 to :18-2.
As a Judge sitting on civil for approximately five years, I can say that few motions are heard involving the conditions of actual examinations. Many motions are brought concerning the when and the where of an examination; yet I can recall no instance where the presence of a third party, a reporter or tape recording during an examination was the subject of any compromise or led to a motion. This background is important to our inquiry, as the authorities cited by counsel in their moving papers are all from outside this jurisdiction. Although New Jersey is silent on this issue, the customs and practice regarding examinations should nevertheless be taken into account.
From the cases relating to physical examination, as distinguished from mental examination, it appears that courts in some jurisdictions have opted for permitting the presence of counsel. The prevailing rationale is to thwart intrusive questions about liability asked under the guise of obtaining the "history." See Sharff v. Superior Court of San Francisco, 44 Cal.2d 508, 282 P.2d 896 (1955); Bartell v. McCarrick, 498 So.2d 1378 (Fla. 4th DCA 1986); Zawacki v. Detroit Harvester Co., 310 Mich. 415, 17 N.W.2d 234 (1945); Jakubowski v. Lengen, 86 A.D.2d 398, 450 N.Y.S.2d 612 (1982); Tietjen v. Department of Labor & Indus., 13 Wash. App. 86, 534 P.2d 151 (1975). Many of those same jurisdictions, however, will bar the presence of counsel at a physical examination if the opponent establishes a need for exclusion. Bartell, 498 So.2d at 1380; Jakubowski, supra, 450 N.Y.S.2d at *608 614; Reardon v. Port Auth. of New York, 132 Misc.2d 212, 215, 503 N.Y.S.2d 233, 235 (1986).
Special circumstances arise in mental examination situations. As with physical exams, there appears to be a split among jurisdictions as to whether the presence of counsel should be permitted. All of these cases, however, present common themes, namely, there is the claim that the doctor selected by the defense is in fact an adversary. Reardon, supra, 503 N.Y.S.2d at 234-235; Jakubowski, supra, 450 N.Y.S.2d at 614. Furthermore, there is the argument that no confidential or privileged relationship attaches to such an examination. Tietjen, supra, 534 P.2d at 154 (however, Washington's counterpart to Fed.R.Evid. 35 permits an attorney to be present during a physical examination).
In opposition, many defendants argue that the chance for a meaningful examination is skewed in favor of the plaintiffs since they are able to be examined and treated by their own experts without intrusion from the defense. As such, these defendants believe it is only fair that they be afforded the same opportunity when their experts conduct an examination.
The more persuasive argument is that the mere presence of a third party interferes with the close communication between examinee and physician that is essential to the procedure's effectiveness. It is for this reason that many courts will deny the presence of counsel at an examination. See Brandenberg v. El Al Israel Airlines, 79 F.R.D. 543 (S.D.N.Y. 1978); Pedro v. Glenn, 8 Ariz. App. 332, 446 P.2d 31 (1968); Edwards v. Superior Court of Santa Clara County, 16 Cal.3d 905, 130 Cal. Rptr. 14, 549 P.2d 846 (1976); Vinson v. Superior Court, 43 Cal.3d 833, 239 Cal. Rptr. 292, 740 P.2d 404 (1987); Rochen v. Huang, 558 A.2d 1108 (Del.Super. 1988).
In Pedro v. Glenn, supra, the Court of Appeals of Arizona overruled the trial court's decision to allow the presence of plaintiff's counsel or a court reporter at the plaintiff's mental examination. The court reasoned that:

*609 It is a useless procedure to conduct a psychiatric examination if the examination cannot be conducted in the atmosphere most conducive to permitting the examining psychiatrist to reach a sound professional opinion. There are many facets to the personal background of an individual which are essential in a psychiatric examination. There are questions in relation to this type of examination which go beyond the questions usually asked of a patient or an examinee in the usual physical examination.
[Pedro, supra, 446 P.2d at 33-34.]
The court in Edwards, supra, also refused to allow counsel to attend a mental examination. Drawing upon decisions in Whitfield v. Superior Court, 246 Cal. App.2d 81, 54 Cal. Rptr. 505 (2 DCA 1966) and In re Spencer, 63 Cal.2d 400, 46 Cal. Rptr. 753, 406 P.2d 33 (1965), the Supreme Court of California reasoned that:
Unlike a physical examination, which consists of little or no analysis of the examinee's mental processes, a psychiatric examination is almost wholly devoted to a careful probing of the examinee's psyche for the purpose of forming an accurate picture of his mental condition ... The basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject ... Surely the presence and participation of counsel would hinder the establishment of the rapport that is so necessary in a psychiatric examination.
[Edwards, 130 Cal. Rptr. 14, 549 P.2d at 848-49.]
The decisions in Pedro and Edwards are not necessarily absolute. In fact, several courts have ruled that, upon a showing of good cause, there are instances when counsel for the plaintiff may be present. Vinson, supra; Zabkowicz v. West Bend Co., 585 F. Supp. 635 (E.D.Wis. 1984); Lowe v. Philadelphia Newspapers, 101 F.R.D. 296 (E.D.Pa. 1983); Brandenberg v. El Al Israel Airlines, supra; Whanger v. American Family Mut. Ins. Co., 58 Wis.2d 461, 207 N.W.2d 74 (1973). The court in Zabkowicz agreed that the plaintiff in an action charging sexual harassment and extreme emotional distress was entitled to have her attorney present to ensure that the defendant's expert did not overstep his bounds. Vinson, supra, also involved allegations of sexual harassment and emotional difficulties as a proximate result thereof. However, the Supreme Court of California held that in the absence of any evidence that the examiner would abuse her rights of privacy, plaintiff's attorney was not permitted to attend. An audio tape was permitted but no discussion or objection is contained in the case as to that aspect.
*610 Rochen v. Huang, supra, would seem to be a case involving "good cause." In Rochen, four separate female patients sued a doctor for sexual abuse. The plaintiffs sought to have their attorney present during the respective examinations, a three hour limit for each examination and an electronic recording of each examination. (There was no objection to this latter request.) The court, relying in part on Lowe, supra, determined that plaintiff's counsel would not be permitted to attend the examination due to the special circumstances of the claim and the rather fiercely contested nature of discovery. The plaintiff, however, was allowed to have a medical specialist of her choosing present at the exam. Rochen, supra, 558 A.2d at 1110-11.
Based on the legal reasons in the foregoing cases, the factual arguments in the letter of the proposed examining psychiatrist[1] and based on the perceived practice or custom regarding mental examination practices in New Jersey, I find that there should be no outside influence present at the mental examination of the plaintiff.
Despite the fact that the examiner is chosen by the defendant, it is not the prevailing opinion in this State that the examination become an adversarial proceeding in and of itself, even though the result of the examination may eventually be used in an adversarial proceeding. To add outside influences to the examination procedure without good cause adds a new step to the adversarial process.
It is imperative that a psychiatric evaluation take place in a comfortable, non threatening environment. With the addition of *611 an outside party, matters of personal sensitivity may be compromised. Patients may also be concerned how responses are perceived by third parties, thus compelling them to withhold or misstate information. Allowing the presence of a tape recorder in lieu of a third party would have the same influence on the patient's responses either consciously or subconsciously.
In the absence of unusual circumstances such as Rochen or Zabkowicz, supra, the examinee should submit to a mental examination in the office of the health provider selected by defense counsel without outsiders or recording devices present. There is no reason why the examinee's husband, physician or attorney can not wait outside in the waiting room. (Dr. Motley says he would speak with representatives after he is done evaluating the patient alone.)
In this jurisdiction it is not the custom to have anyone accompany the examinee inside the examining room of the physician. We should do everything we can to keep it that way. There is no need to turn the examining room into a court room. Problems relating to any questions posed as to liability, misquotes in the reports and the like, have traditionally been handled by counsel with motions to strike. Furthermore, counsel has the opportunity to challenge a report from an examining physician through the use of depositions and/or cross examination.
The only remaining issues involve plaintiff's request for legal fees and defendant's request for doctor's fees resulting from the aborted examination. Both motions are denied. Finally, defense counsel's motion to dismiss the plaintiff's complaint as a result of this incident is baseless and also denied.
NOTES
[1] In his March 18, 1994 letter, Dr. John P. Motley, M.D., F.A.P.A. states, "It is my practice in conducting a psychiatric examination to interview the patient free from other influences that may be distracting to them during the evaluation. The presence of another person can frequently influence the type of responses that the patient may make. This may not be necessarily a conscious thing, but the realization that another person is there in the room, whatever their relationship to the patient may be, can alter the nature and quality of the patient's responses. Indeed, if the patient really had a significant problem cooperating in an individual interview, this would be an important diagnostic indicator."