38 A.3d 703 (2012)
424 N.J. Super. 542
Wanda KOCH, Plaintiff,
v.
Stephen R. KOCH, Defendant.
Docket No. FM-19-378-10
Superior Court of New Jersey, Chancery Division, Sussex County, Family Part.
Decided April 21, 2011.
*704 Curtis J. Romanowski, Metuchen, for defendant (Romanowski Law Offices, attorneys).
Paris P. Eliades, Sparta, and Dina M. Mikulka for plaintiff (Courter, Kobert & Cohen, P.C., attorneys).
GILSON, J.S.C.
The novel issue presented by this motion is whether one party can compel the recording of all interviews conducted by all experts involved in a child custody evaluation.
For the reasons set forth below, this opinion concludes that a party has the right to record his or her own interviews with a psychologist or psychiatrist, but does not have the right to compel the other party's expert to record interviews of the other party or the parties' children.
The parties in this matter, Wanda Koch and Stephen Koch, were married on August 8, 1998. They have three children, J.K., age 11, K.K., age 10, and R.K., age 6. On February 8, 2010, plaintiff filed a complaint for divorce from defendant.
On February 16, 2011, the court held a case management conference with counsel for both parties. During that conference, counsel for defendant requested that the case management order include a provision requiring all custody interviews conducted by either party's expert to be audio-recorded. Plaintiff's counsel objected. The court denied defense counsel's request without prejudice so that defendant could file a motion addressing the issue.
Thereafter, counsel for defendant filed the present motion seeking an order requiring the audio-recording of all interviews conducted by either party's expert during the custody evaluation. In support of his motion, defendant relies on the Appellate Division case B.D. v. Carley, 307 N.J.Super. 259, 704 A.2d 979 (App.Div. 1998). In essence, defense counsel argues that the B.D. v. Carley case stands for the proposition that all psychological examinations are subject to recording upon a party's request, as a matter of right.
In opposing the motion, plaintiff's counsel argues that no New Jersey opinion, published or unpublished, specifically addresses the issue of whether a custody evaluation can or must be recorded. Furthermore, plaintiff's counsel contends that *705 the psychological evaluation in B.D. v. Carley, is distinguishable from a child custody evaluation.
The difference in counsels' interpretations of B.D. v. Carley invites this court to consider whether B.D. v. Carley applies to custody evaluations. In B.D. v. Carley, supra, 307 N.J.Super. at 260, 704 A.2d 979, the defendant scheduled a psychological evaluation of the plaintiff in a civil action, filed in the Law Division, where the plaintiff's emotional state was in issue. The plaintiff's counsel informed defense counsel that plaintiff intended to use a recording device to audio-record the psychological examination. The defendant objected and moved to prohibit the plaintiff from audio-recording the psychological evaluation. The trial court granted the defendant's motion and prohibited the plaintiff from recording her evaluation by the defendant's expert. Id. at 260, 704 A.2d 979.
The Appellate Division granted the plaintiff's motion for interlocutory appeal, reversed the trial court's order, and remanded the matter to the Law Division. The court held that in civil actions where a party's emotional state was placed in issue, that party could employ an unobtrusive recording device during that party's psychological examination with the opposing party's expert. Ibid. The court specifically noted that the psychological examination in question was one for the purpose of discovery and not for treatment, and, therefore, reasoned that allowing the plaintiff to use an unobtrusive recording device during her own psychological evaluation with the defendant's expert preserved a record of a discovery examination. Ibid.
There are several points worthy of note concerning the B.D. v. Carley decision. First, the case involved a request by a party to record her own interview by the opposing party's psychological expert. B.D. v. Carley did not involve a child best interest/custody evaluation. There was no request to record, and hence no discussion of recording interviews of the other party or children. Id. at 260-61, 704 A.2d 979. Indeed, the majority of the B.D. v. Carley decision focused on a discussion of a split in authority concerning whether counsel could be present during physical, psychological or psychiatric evaluations. Id. at 261-62, 704 A.2d 979. Specifically, the trial court in B.D. v. Carley had relied on an earlier Law Division decision in the matter of Stoughton v. B.P.O.E. No. 2151, 281 N.J.Super. 605, 658 A.2d 1335 (Law Div.1995). The Appellate Division criticized and ultimately overruled Stoughton, to the extent that Stoughton had precluded recordings as an alternative to allowing the presence of counsel. B.D. v. Carley, supra, 307 N.J.Super. at 262, 704 A.2d 979.
Second, the psychological evaluation in B.D. v. Carley was a discovery device. The defendant in B.D. v. Carley raised an issue about the plaintiff's "emotional state". Id. at 260, 704 A.2d 979. In allowing an unobtrusive recording, the Appellate Division in B.D. v. Carley reasoned that a party's right to preserve evidence during discovery trumped the preference of the other party's psychologist who preferred not to have the recording because the recording might interfere with the evaluation. In that regard, the Appellate Division explained:
We determine here that the defense psychologist does not have the right to dictate the terms under which the examination will be held. This is a discovery psychological examination, not one in which plaintiff is being treated. Plaintiff's right to preserve evidence of the nature of the examination, the accuracy of the examiner's notes or recollection, the tone of voice and the like outweigh *706 the examiner's preference that there be no recording device.
[Id. at 262, 704 A.2d 979.]
The question on this motion is whether the reasoning in B.D. v. Carley applies to a child custody evaluation in a family matter. Counsel for defendant in this case could cite to no published or unpublished decision where the B.D. v. Carley case was applied to a child custody evaluation. Moreover, independent research has not revealed any case in New Jersey that requires, if demanded, the recording of interviews during a child custody evaluation. Indeed, research revealed no New Jersey case that discusses the issue.
Counsel for defendant argues that this lack of authority is because the proposition is so clear that no case has needed to state the obvious; that is, that the B.D. v. Carley reasoning applies to a child custody evaluation. That lack of direct authority, however, does not logically lead to the conclusion that the holding of B.D. v. Carley applies to a child best interest/custody evaluation. Indeed, the absence of authority could as easily be argued to support the proposition that the B.D. v. Carley holding does not apply to child custody evaluations.
That this issue is an open question is further confirmed by a proposed amendment to Rule 5:3-3. The New Jersey Supreme Court Family Practice Committee has recently proposed an amendment to Rule 5:3-3. Under the proposed rule amendment "custody and parenting time evaluations by mental health experts may be recorded at the request of either party or an expert." See Family Practice Committee Final Report, (January 20, 2011), available at http://www.judiciary.state.nj.us/reports2011/family.pdf. (last visited on April 20, 2011). Significantly, the language of the proposed rule is permissive, as the word "may" suggests that it will be left to the court's discretion whether to grant a request to record such evaluations if the other party objected. Further, the proposed rule amendment is just thata proposal on which the Supreme Court has not yet acted.[1]
This court also conducted independent research to determine whether other states have addressed the issue of recording child custody evaluations. While every state has a statute, court rule, or case law regarding child custody evaluations, research revealed only two states that have court rules or case law that specifically addresses recording custody evaluations. The two states that have specifically addressed the issue are Pennsylvania and Florida. Pennsylvania has a court rule that prohibits the recording of child custody evaluations. See Pa. R. Civ. P. 4010(a)(4)(ii) and (a)(5)(ii). The courts in Pennsylvania have enforced this rule and have prohibited the recording of child custody evaluations. See Lloyd v. Lloyd, 889 A.2d 1246 (Pa.Super.2005). In Florida, the courts have discretion whether to permit the interviews of children in a child custody evaluation to be recorded. See Fla. Fam. Law. R.P. 12.363.(a)(4). Although a litigant may request that a child custody evaluation be recorded, the court decides whether recording the evaluation should be ordered. Accordingly, the rule in Florida is similar to the rule currently proposed in New Jersey. As previously pointed out, the proposed rule in New Jersey would leave it to the discretion of *707 the Family Part judge to determine whether interviews in child custody evaluations may be recorded if there is an objection. In summary, two states prohibit or leave to the discretion of the court whether to permit interviews in custody evaluations to be recorded. No state requires that custody evaluation interviews be recorded if demanded by one party.
The strongest argument in favor of allowing recordings, if requested, is that evaluations should produce objective, accurate information on the people being evaluated. A recording will arguably allow the court to better assess the recommendations of the evaluator. For example, if the evaluator reported that a particular parent stated a certain fact during the interview, but that parent denied the statement at trial, a recording would help to clarify that dispute. The argument for preserving the actual interview is most persuasive when applied to the interview involving the party requesting the recording. That argument is not as persuasive when applied to compelling recordings of the other party or the children.
A child best interest/custody evaluation is not merely a psychological evaluation of a particular individual. Instead, custody evaluations focus on the children's best interest. The resulting expert reports and testimony are designed to assist the court in considering the thirteen factors set forth in N.J.S.A. 9:2-4(c). In that regard, the current version of Rule 5:3-3(b) specifically directs:
Mental health experts who perform parenting/custody evaluations shall conduct strictly non-partisan evaluations to arrive at their view of the child's best interest regardless of who engages them. They should consider and include reference to criteria set forth in N.J.S.A. 9:2-4, as well as any other information or factors they believe pertinent to each case.
[See also, Kinsella v. Kinsella, 150 N.J. 276, 317-19, 696 A.2d 556 (1997).]
Accordingly, a custody evaluation is an expert report where the court expects, and is assisted by, the independent professional judgment of a licensed mental health expert. Requiring recordings could undermine the very purpose of the evaluation. If the children know that they are being recorded, and know that their parents are in a custody dispute, the children might be less candid for fear that their parents will hear what they say to the evaluator. Such recordings effectively bring the parents into the children's interviews and could distort the information needed to prepare an accurate and balanced evaluation.
The New Jersey Board of Psychological Examiners permits psychologists to record custody evaluations. Guideline 7 states in part: "In addition, psychologists may choose to use audio or video recordings depending upon the understanding of the requirement of the specific case or situation." See Family Practice Committee Final Report, (January 20, 2011), available at http://www.judiciary.state.nj.us/reports 2011/family.pdf. (last visited on April 20, 2011). See also standard 10.3(c) Model Standards of Practice of Child Custody Evaluations adopted by the Association of Family and Conciliation of Courts, (2006) ("A detailed recording of the observation session shall be created. If neither audio nor video taping is done and if, for any reason, contemporaneous note taking is difficult, notes must be entered as soon as possible after the session.") These standards, however, make the recordings available to the psychologist and not to the parties or their counsel. Thus, they are tools to assist the psychologist in their *708 evaluation and not recordings to be used in a custody trial.
Proponents of recording custody evaluations have argued that providing the trier of fact (i.e., the judge) with the actual, unprocessed statements of the interviewees will allow the trier to make better assessment of the expert's conclusions. See the comments to the Family Practice Committee Final Report to the New Jersey Supreme Court. (January 20, 2011), available at http://www.judiciary. state.nj.us/reports2011/family.pdf. (last visited on April 20, 2011). There are, however, several flaws with that argument. First, as already pointed out, the goal of a custody evaluation is to obtain the independent recommendation of an expert. It is the job of the expert to give his or her professional assessment of the raw data that the expert collects during the custody evaluation. The resulting report is not merely a compilation of raw data, but is a synthesis of information offered to the court by a trained professional. Asking the judge to review the underlying data on which the expert formed his or her conclusion is really asking the judge to assume the role of a psychiatrist or psychologist. While a court can be, and often is appropriately, asked to assess an expert's opinion, and either reject that opinion or give greater weight to the opinion of another expert, the court should not do that based on an assessment of the expert's raw data. Instead, the proper assessment of the expert should be based on traditional and well established procedures, such as the deposition and cross examination of the expert. The court, however, should not be asked to make a psychological evaluation.
Moreover, the reality is that in most situations, the judge will not be listening to all of the recorded interviews, but only selections of various interviews presented by the counsel involved in the matter. In such situations, the court will be asked to disregard an expert's opinion based on select data, as opposed to a complete record.
Many psychologists object to and will not record evaluations. Indeed, plaintiff in this case stated that she contacted at least three well-regarded experts who refused to do the evaluation if recordings were required. In contrast, defendant has retained an expert who reportedly routinely records all interviews during a custody evaluation. It is clear that there is a split in the views of psychologists on whether it is appropriate, or counterproductive, to record interviews during a child custody evaluation. The Appellate Division in B.D. v. Carley made it clear that a psychologist does not have the right to dictate the terms and conditions under which an examination is held. 307 N.J.Super. at 262, 704 A.2d 979. The court, however, does need to consider the practical effect of one party requiring the other party's expert to record all interviews. In this case, the practical effect would be to preclude plaintiff from selecting the expert that she chooses because that expert does not find it appropriate to record child best interest/custody evaluation interviews.
The split in views among psychologists concerning recording custody evaluations raises a more fundamental issue regarding the role of the court in matters involving children. New Jersey has long recognized that under the doctrine of parens patriae, courts must focus on the best interest of the children in conflicts between parents. See, e.g., Fawzy v. Fawzy, 199 N.J. 456, 474-75, 973 A.2d 347 (2009); Moriarty v. Bradt, 177 N.J. 84, 102-03, 827 A.2d 203 (2003), cert. denied, 540 U.S. 1177, 124 S.Ct. 1408, 158 L.Ed.2d 78 (2004). Indeed, the New Jersey Supreme Court has emphasized the court's special responsibility to safe guard the interests of children *709 caught in custody disputes. See Kinsella, supra, 150 N.J. at 317-18, 696 A.2d 556.
The fundamental issue then becomes: is it in the best interest of children to allow their parents to have access to the children's interviews? The evaluator often observes and has discussions with the parents while the parent interacts with the children. When, however, the evaluator speaks to the children alone, the very purpose of that interview is to obtain the children's independent views. Giving parents recordings of those interviews, albeit after the fact, undercuts the very goal of the interview and prevents the evaluator from getting the candid views of the children because the children will know that their parents will be listening to the interviews.
Of even greater concern is the high potential for misuse of the recordings of the children's interviews. In contentious custody disputes, it is not hard to imagine how a parent could confront a child with the child's own words or make a child believe that he or she has somehow been disloyal to that parent. Even the best meaning parents, when concerned by what they heard in their child's recorded interview, may let words or information from the child's interview slip that may cause anxiety or harm to the child. It is important to keep in mind that children being interviewed in a custody evaluation are aware that their parents are in a child custody dispute, and they may already have anxiety and concern over their role in that dispute and how the custody arrangements will be resolved.
Against the obvious potential harm to the child, it is hard to identify a legitimate need for the disclosure of the child's interview. As already pointed out, the proponent relies on the need for open discovery in custody matters. It is worth reiterating that custody evaluations are not discovery devices. Indeed, the children have not brought the action; rather they are innocent children swept up in a dispute between their parents. In short, litigants' rights to discovery cannot trump the court's responsibility to protect the child. As a consequence, if one party hires an expert who chooses to record all interviews and make those recordings available to a party, that party will need to obtain the permission of the court before the expert can release any recording of a child's interview to any counsel or to any parent.
In summary, the rationale underlying the decision in B.D. v. Carley, supra, 307 N.J.Super. 259, 704 A.2d 979, does not apply to a child custody evaluation, except in one limited circumstance. That circumstance is the interview of the particular party. Accordingly, this court holds that a party (that is, a particular parent) has the right to unobtrusively record his or her own interview during a custody evaluation. That party does not, however, have the right to mandate that the other party's psychologist, or a court-appointed psychologist, record the interviews of the other party or the children. Furthermore, no expert has the right to make recordings of the interviews of children available to counsel or a party without the express authorization of the court. The court, in it parens patriae role, has the responsibility to decide if, and under what conditions, any mental health expert can make recordings of children's interviews available to counsel or a party when that interview is conducted as part of a custody evaluation. In this case, there has been no showing of a need for either party's expert to record the children's interviews. Accordingly, the court will prohibit both parties' experts from providing any counsel or any party with a recording of any child's interview conducted during a custody evaluation. *710 Finally, any recordings made during a custody evaluation, which are released to one counsel or one party, must be released to all counsel, all parties and all other custody experts under a protective order. The protective order will provide that the recordings can only be used in the particular matter and that the recordings cannot be discussed with, nor can the contents be revealed to, the children or third parties.
NOTES
[1] Subsequent to the issuance of this opinion, the Supreme Court did not adopt the proposed amendment to Rule 5:3-3. Thus, Rule 5:3-3 does not include language permitting either party to request the recording of custody and parenting time evaluations. See Supreme Court order, dated July 21, 2011, adopting amendments to the New Jersey Court Rules effective September 1, 2011.