[No. A106643. First Dist., Div. Five. Apr. 21, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ALVIN BURNS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, part II of this opinion is not certified for publication.

**COUNSEL**

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Moona Nandi and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMONS, J.**—In the course of proceedings under the Sexually Violent Predators (SVP) Act (Welf. & Inst. Code,[1] § 6600 et seq.), the district attorney moved for an order compelling appellant, Alvin Burns, to submit to updated psychological evaluations by two psychologists pursuant to section 6603, subdivision (c). The trial court granted the order and rejected appellant's request that his attorney be present at the interviews. At trial, the two psychologists provided opinions that appellant met the statutory definition of an SVP that were, in part, based on the updated evaluations. The jury found that appellant was an SVP and the trial court committed him for two years to the custody of the California Department of Mental Health (DMH). Appellant contends the court erred by denying him the right to the presence of counsel at the psychological interviews and by excluding crucial defense witnesses at trial. We affirm.

### BACKGROUND

We recite only those facts necessary to frame the issues presented. In 1994, appellant was convicted of lewd and lascivious conduct with a minor, P. M., and sentenced to the California Department of Corrections (CDC). Earlier, he had been convicted of the rape of Doris S. in 1974, the kidnapping and sexual assault of Debra S. in 1977, and the sexual assault of Linda H. in 1986. Two psychologists, Drs. Korpi and Updegrove, interviewed appellant in 2000 and performed updated evaluations in 2004. Each psychologist reviewed appellant's prison file and his medical records. Each testified at the trial that appellant met the statutory definition of an SVP.

In addition to appellant's convictions, Dr. Korpi considered that, in 1973, appellant engaged in aggressive sexual misconduct while at the California Youth Authority, and, in 1976, went to Atascadero State Hospital (ASH) for a sexual reorientation program. While at that sexual reorientation program, he had two sexually aggressive contacts with male patients. In addition, in 2002, while at ASH, he was found in the stairwell zipping up his pants as a man knelt in front of him. In 2003, he was found in his room at ASH with a partially undressed psychiatric technician who admitted they were preparing to have sex.

Testifying on his own behalf, appellant admitted the offenses against Doris S., Debra S. and P. M. He denied raping Linda H. and denied the 2002 and 2003 incidents at ASH. He also denied ever having a mental disorder and denied needing therapy or treatment. On cross-examination, he said that after

---

[1] All undesignated section references are to the Welfare and Institutions Code.

his 1994 conviction, when he was 37 years old, he realized that he needed to change, and did so. He expressed remorse for his past offenses and said he has "moved past" them. He said the fact that he has been incarcerated for most of his son's life is motivating him not to reoffend.

Psychologist O. S. Glover testified for the defense that he performed a clinical and forensic interview of appellant in November 2003. He also reviewed appellant's prison records and the 2000 and 2004 evaluations of Drs. Korpi and Updegrove. Dr. Glover opined that appellant has no congenital defects that would make him an SVP. According to Dr. Glover, although appellant has engaged in criminal activity throughout his life, he does not lack volitional control or need treatment at ASH. Dr. Glover also said that appellant does not suffer from any present distress or dysfunction.

DISCUSSION

I.  *No Right to Presence of Counsel at Updated SVP Evaluation Interviews*

Appellant contends the trial court's denial of his request that defense counsel be present at his updated evaluation interviews in 2004 violated his right to counsel.

■ "The stated purpose of the SVP Act is to identify persons who have certain diagnosed mental disorders that make them likely to engage in acts of sexual violence and to confine those persons for treatment of 'their disorders only as long as the disorders persist and not for any punitive purposes.' [Citation.]" (*Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677, 1683 [3 Cal.Rptr.3d 292].) The SVP Act provides for the two-year involuntary commitment of an offender immediately upon release from prison upon the finding that the person is an SVP because he or she "has been convicted of a sexually violent offense against two or more victims and . . . has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1); see *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 243 [127 Cal.Rptr.2d 177, 57 P.3d 654].) The future sexually violent criminal acts must also be predatory in nature. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1186 [124 Cal.Rptr.2d 186, 52 P.3d 116]; accord, *Cooley*, at p. 243.)

■ If the director of the CDC determines that a prisoner may be an SVP, the director must refer the prisoner for initial screening by the CDC at least six months before the prisoner's scheduled release date. (§ 6601, subd. (a).) If the CDC finds the prisoner is likely to be an SVP, he or she is referred to the DMH for a "full evaluation." (*Id.*, subd. (b).) The prisoner must then be

evaluated by at least two mental health professionals designated by the DMH director. (*Id.*, subds. (c) & (d).) If at least two evaluators agree that the prisoner "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody" (*id.*, subd. (d)), the DMH director transmits a request for a civil commitment petition to the county where the prisoner was last convicted. (*Id.*, subds. (d)–(h).) Thereafter, if the county's designated attorney concurs in the request, he or she can file a petition for commitment in the superior court. (*Id.*, subd. (i); *Cooley v. Superior Court, supra,* 29 Cal.4th at p. 244.)

▇ Once the petition is filed, the superior court reviews it to determine whether it contains sufficient facts that "if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the petition on its face supports a finding of probable cause, the court must hold a probable cause hearing at which the person named in the petition is entitled to the assistance of counsel. If no probable cause is found, the petition is dismissed. If the court determines there is probable cause that the person named in the petition is an SVP, the court must order a trial and the person must remain in custody in a secure facility until trial is completed. (§ 6602, subd. (a); *Cooley v. Superior Court, supra,* 29 Cal.4th at pp. 244–245.)

▇ "At trial, the alleged [SVP] is entitled to 'the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and have access to all relevant medical and psychological records and reports.' (§ 6603, subd. (a).)"[2] (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1147 [81 Cal.Rptr.2d 492, 969 P.2d 584]; see *People v. Carmony* (2002) 99 Cal.App.4th 317, 327 & fn. 4 [120 Cal.Rptr.2d 896].) "If the attorney petitioning for commitment under the [SVP Act] determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request the [DMH] to perform updated evaluations." (§ 6603, subd. (c); see *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 802–803 [107 Cal.Rptr.2d 381, 23 P.3d 611].) The jury, by unanimous verdict, or the court, if jury is waived, must determine beyond a reasonable doubt whether the person named in the petition is an SVP. (§§ 6603, subd. (f), 6604.) If the person is determined not to be an SVP, he or she is released at the expiration of his or her prison term. (§ 6604.) If

---

[2] Section 6603, subdivision (a) provides: "A person subject to this article shall be entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports. In the case of a person who is indigent, the court shall appoint counsel to assist him or her, and, upon the person's request, assist the person in obtaining an expert or professional person to perform an examination or participate in the trial on the person's behalf."

the person is determined to be an SVP, he or she is committed to the custody of DMH for two years "for appropriate treatment and confinement in a secure facility" (§ 6604), subject to annual review and extension of commitment if the diagnosed mental disorder and dangerousness to the community persists (§ 6605). (*Bagration v. Superior Court, supra,* 110 Cal.App.4th at p. 1684.)

In February 2000, two months before the SVP Act petition was filed, Drs. Korpi and Updegrove performed SVP evaluation interviews of appellant. In December 2003, over appellant's objection, the district attorney moved for an order compelling appellant to submit to updated SVP evaluation interviews by Drs. Korpi and Updegrove. (§ 6603, subd. (c).) The court granted the motion and signed the proposed order directing appellant to submit to the evaluation interviews, but deleted a provision permitting the district attorney and defense counsel to be present during the interviews. At a subsequent hearing, appellant requested that defense counsel be present at the evaluation interviews. In denying the request, the court stated, "I just don't think it gives you a valid interview. If you've got somebody sitting there saying, oh, don't say this, don't say that, I really don't. These are designed just so that everybody knows how his mental status is. And that seems to me that that would put a chill on the actual free-flowing of the interview. So I'm denying your request. So whatever you want to do. [¶] That's my personal feeling. And it's based on a lot of things, but I've had a lot of experience in the mental health setting and I just know that they try to have a comfortable setting where it could free-flow, so they can get a good idea what's going on with it." In response to defense counsel's offer to abide by an order that he silently observe the interview, the court stated that counsel's mere presence at the interview would be "detrimental to the whole procedure."

Appellant's contention that the trial court should have granted his request for the presence of counsel at the updated evaluation interviews conducted in 2004 rests on two arguments: (1) The liberty interests involved justify providing those subject to SPV Act proceedings with the same constitutional protections provided to criminal defendants; and, (2) *In re Spencer* (1965) 63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33] grants criminal defendants the right to counsel at an analogous mental health interview.[3] We disagree with each proposition.

---

[3] Appellant does not claim he had a right to counsel at the initial mental health evaluation interviews. In *People v. Carmony, supra,* 99 Cal.App.4th 317, the court rejected the assertion that a defendant subject to the SVP Act has a right to counsel at the time of his initial, prepetition mental health evaluation interview. (*Carmony,* at pp. 327–328.) "To require a court appearance for appointment of counsel before the interviews are conducted, and before a petition is filed, would cause delay and increase the administrative burden at a preliminary stage in [SVP Act] proceedings without increasing the accuracy of the process." (*Id.* at p. 328.)

First, California courts have consistently refused to treat SVP Act proceedings as criminal and transplant the full range of procedural rights accorded criminal defendants to a civil commitment proceeding. (*Hubbart v. Superior Court, supra,* 19 Cal.4th at pp. 1170–1179 [state and federal ex post facto clauses not implicated by SVP Act proceedings]; cf. *People v. Collins* (2003) 110 Cal.App.4th 340, 348 [1 Cal.Rptr.3d 641] [because proceedings under the SVP Act are civil in nature, "we do not apply principles applicable to criminal proceedings, unless the Legislature has indicated otherwise"].) In *People v. Leonard* (2000) 78 Cal.App.4th 776, 789–793 [93 Cal.Rptr.2d 180], the court addressed and rejected an argument closely related to the argument appellant raises here. California courts have held that in proceedings under Penal Code section 1369 to determine a criminal defendant's mental competency to stand trial, " ' "neither the statements of [an accused] to the psychiatrists appointed under section 1369 nor the fruits of such statements may be used in trial of the issue of . . . guilt, under either the plea of not guilty or that of not guilty by reason of insanity." ' [Citations.]" (*Leonard,* at p. 791.) The defendant in *Leonard* tried to analogize proceedings under the SVP Act to proceedings under section 1369 in support of his argument that he was entitled to exclude statements he was compelled to make at his psychiatric evaluations because such statements were obtained in violation of his right against self-incrimination. (*Leonard,* at pp. 791–792.) The *Leonard* court relied on *Allen v. Illinois* (1986) 478 U.S. 364 [92 L.Ed.2d 296, 106 S.Ct. 2988] and *Kansas v. Hendricks* (1997) 521 U.S. 346 [138 L.Ed.2d 501, 117 S.Ct. 2072], to reject this contention, concluding that because SVP Act proceedings are civil in nature, the Fifth Amendment protections against self-incrimination do not apply. (*Leonard,* at pp. 789–790, 791–793.)

Appellant contends, however, that *Leonard* supports an extension of the constitutional protections afforded criminal defendants. In *Leonard,* the SVP Act defendant asserted the trial court violated his constitutional and statutory rights to counsel by failing to conduct a substitution of counsel hearing, pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]. (*People v. Leonard, supra,* 78 Cal.App.4th at pp. 783–784.) Without any analysis of the issue, the Court of Appeal stated, "Given the liberty interests involved, *we assume for purposes of argument* that individuals subject to the [SVP Act] deserve the same constitutional protections accorded criminal defendants. [Citations.]" (*Leonard,* at p. 784, italics added.) Having made that assumption, the court went on to conclude that the trial court had not committed a *Marsden* violation. (*Leonard,* at p. 784.) The Supreme Court has recently reminded us of "the line we have drawn between 'holdings and mere descriptive language' [citation]. The holding of a case is coextensive with its particular facts. [Citation.]" (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 933 [22 Cal.Rptr.3d 530, 102 P.3d 915].) Quite clearly, *Leonard* did not *hold* that the rights of those subject to

the SVP Act are coterminous with those of criminal defendants. Instead, it held simply that even if *Marsden* applies to SVP Act proceedings, the defendant's rights had not been violated.

Second, *In re Spencer, supra,* 63 Cal.2d 400 is inapposite. In that death penalty case, the defendant entered a plea of not guilty by reason of insanity and a psychologist was appointed by the court to interview him. (Pen. Code, § 1027.) The defendant ultimately withdrew this plea and raised no mental defense during the guilt phase of his trial. The psychiatrist was permitted to testify at the guilt phase about statements made by the defendant during the interview. (*Spencer,* at p. 404.) The court found this ruling erroneous, albeit harmless. It did *not,* however, prescribe a right to counsel at such interviews. Instead, it held that if the defendant submits to a mental examination by a court appointed psychiatrist, but then "does not specifically place his mental condition into issue at the guilt trial, then the court-appointed psychiatrist should not be permitted to testify at the guilt trial. If defendant does specifically place his mental condition into issue at the guilt trial, then the court-appointed psychiatrist should be permitted to testify at the guilt trial, but the court should instruct the jurors that the psychiatrist's testimony as to defendant's incriminating statements should not be regarded as proof of the truth of the facts disclosed by such statements . . . ." (*Id.* at p. 412, fn. omitted.)

█ Appellant is not a criminal defendant, and there is no guilt phase in an SVP Act proceeding, where no culpability is affixed. (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1175.) The focus of the trial is the defendant's mental health; a sexually violent predator is defined, in part, as a person who "has a diagnosed mental disorder that makes the person a danger to the health and safety of others." (§ 6600, subd. (a)(1).) One cannot logically apply *Spencer's* rule in this completely different context.

█ The updated mental evaluation at issue here is more properly analogized to a mental examination of an adverse party in a civil case. Appellant concedes that discovery in SVP Act proceedings is governed by the Civil Discovery Act of 1986 (Discovery Act) (Code Civ. Proc., § 2016 et seq.). (*People v. Calhoun* (2004) 118 Cal.App.4th 519, 524 [13 Cal.Rptr.3d 166]; *People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 988 [114 Cal.Rptr.2d 760]; *Leake v. Superior Court* (2001) 87 Cal.App.4th 675, 682 [104 Cal.Rptr.2d 767].) Section 2032, subdivision (g)(2) of the Code of Civil Procedure, which governs mental examinations provides: "The examiner and examinee shall have the right to record a *mental* examination on audio tape. However, nothing in this article shall be construed to alter, amend, or affect existing case law with respect to the presence of the attorney for the examinee or other persons during the examination by agreement or court

order." (Italics added.) In contrast, section 2032, subdivision (g)(1) of the Code of Civil Procedure, which governs physical examinations, provides: "The attorney for the examinee or for a party producing the examinee, or that attorney's representative, shall be permitted to attend and observe any *physical* examination conducted for discovery purposes . . . ." (Italics added.) In *Golfland Entertainment Centers, Inc. v. Superior Court* (2003) 108 Cal.App.4th 739, 746–749 [133 Cal.Rptr.2d 828]), the court concluded that the Discovery Act's different treatment of the right to counsel's presence at mental and physical examinations "strongly indicates the Legislature's intent that counsel ordinarily should *not* be present at a mental examination."[4]

Finally, as the trial court correctly observed, providing appellant with counsel at the updated mental examinations would seriously undermine the SVP Act's goal of reliably identifying persons with certain diagnosed mental disorders that make them likely to commit acts of sexual violence and to confine them for treatment until they are cured. (*Hubbart v. Superior Court, supra,* 19 Cal.4th at pp. 1144, 1171.) As our Supreme Court stated in *Spencer*, "we recognize that [counsel's] presence may largely negate the value of the examination. Surely the presence and participation of counsel would hinder the establishment of the rapport that is so necessary in a psychiatric examination. [Citations.] . . . 'The basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject.' [Citations.] The attendance of counsel at the interview might thus frustrate the legislative goal of obtaining the evaluation of defendant's mental state by an impartial expert . . . ." (*In re Spencer, supra,* 63 Cal.2d at pp. 411–412; see *Edwards v. Superior Court* (1976) 16 Cal.3d 905, 910 [130 Cal.Rptr. 14, 549 P.2d 846].)

Neither the law nor public policy supports appellant's argument that an SVP Act defendant has a constitutional right to the presence of counsel at an updated mental evaluation interview. This right would be inconsistent with the civil nature of SVP Act proceedings and would impede, not promote, the legislative goal. We decline to impose it.

## II. *Court Did Not Err in Excluding Witnesses**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] *Golfland* was a personal injury action in which the defendant objected to the presence of counsel at the mental examination of the accident victim (a minor). (*Golfland Entertainment Centers, Inc. v. Superior Court, supra,* 108 Cal.App.4th at p. 746.) *Golfland* noted that the " 'existing case law' " referred to in Code of Civil Procedure section 2032, subdivision (g)(2), clarifies that except in "exceptional cases," counsel should not be permitted to attend a mental examination. (*Golfland,* at p. 747.) Appellant does not assert that this is an exceptional case justifying the presence of defense counsel at his evaluation interviews. His argument is founded on his statutory or constitutional "right to counsel."

*See footnote, *ante*, page 794.

## Disposition

The judgment is affirmed.

Stevens, Acting P. J., and Gemello, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 20, 2005. George, C. J., and Baxter, J., did not participate therein.