Filed 3/26/15  P. v. Wilson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN McKINLEY WILSON,<br><br>    Defendant and Appellant. | F067070<br><br>(Super. Ct. No. 1001791)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Marie Sovey Silveira, Judge.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, John W. Powell and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant John McKinley Wilson challenges his commitment as a sexually violent predator (SVP) on the grounds that (1) the trial court erred in denying a continuance,

(2) there was error in admission of evidence, (3) the prosecutor committed misconduct in closing argument, and (4) the failure of the evaluators to comply with Code of Civil Procedure section 2032.530[1] was prejudicial. We reject his contentions and affirm the commitment order.

## FACTUAL AND PROCEDURAL SUMMARY

Some of the facts and history are taken from our unpublished decision in *People v. Wilson* (Sept. 26, 2008, F053625). Wilson committed his first qualifying SVP Act (SVPA) offense in 1975. He was convicted of rape by force or threat after raping a 77-year-old woman in her home during a robbery. In 1980, while on parole for the first offense, Wilson committed his second qualifying SVPA offense, rape by force or threat and forced oral copulation. Wilson also was identified as having committed two additional rapes, one in 1974 and one in 1975, although he was not brought to trial on those offenses. Wilson behaved poorly as a prisoner, collecting numerous prison rule violations.

Wilson initially was found by a jury to be an SVP in May 2000. He was committed to Atascadero State Hospital (ASH) for two years. Extensions were sought and obtained by respondent, Stanislaus County District Attorney, committing Wilson through May 2006, the last determination being made by jury trial in December 2005.

In October 2005, prior to the December 2005 trial, a new extension petition was filed seeking commitment for the period 2006 to 2008. The findings of the jury in December 2005 were deemed by the trial court as probable cause to hold a trial on the October 2005 extension petition. The petition was supported, as were all previous petitions, by two evaluations from psychologists who opined Wilson was an SVP as defined by the SVPA and concluded Wilson would be a danger to society if released.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2.

During the pendency of the petition, the SVPA was amended by Senate Bill No. 1128, signed into law as emergency legislation in September 2006. (Stats. 2006, ch. 337, §§ 53-62.) After amendment, Welfare and Institutions Code section 6604 provided, in part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement .…" Shortly thereafter, the voters approved Proposition 83, which amended several statutes addressing violent sex offenses, including the SVPA. (See Historical and Statutory Notes, 73E West's Ann. Welf. & Inst. Code (2010 ed.) foll. § 6604, p. 149; Prop. 83, § 27, as approved by voters, Gen. Elec. (Nov. 7, 2006, eff. Nov. 8, 2006).) Like Senate Bill No. 1128, Proposition 83 changed the two-year civil commitment term to an indeterminate civil commitment.

In April 2007, the People filed a motion asking that Wilson's commitment be converted to an indeterminate term. The trial court granted the motion and ordered that Wilson be committed to the State Department of Mental Health (now State Department of State Hospitals), Coalinga State Hospital (CSH), for an indeterminate term, subject to the annual reviews provided under the SVPA. In *People v. Wilson, supra,* F053625, we concluded this was error and remanded the matter for a trial to determine if Wilson currently was an SVP. Our opinion specified that if determined to be an SVP, Wilson could be committed for an indeterminate term.

After remand, a jury trial was held to determine if Wilson was an SVP. Dr. Jesus Padilla evaluated Wilson in May 2012. Padilla noted that Wilson had committed at least two sexually violent offenses. Padilla diagnosed Wilson as suffering from a diagnosed mental disorder, specifically, paraphilia not otherwise specified (NOS), sex with nonconsenting persons, polysubstance dependence in a controlled environment, and antisocial personality disorder.

Padilla scored Wilson on the Static-99R, an actuarial assessment instrument, to assess the risk that Wilson would reoffend. Padilla also looked at dynamic variables related to sexual recidivism that were not accounted for in the Static-99R. Padilla placed Wilson in the high-risk range for reoffending. Among the variables Padilla considered were (1) Wilson reoffended while on parole; (2) he repeatedly absconded from parole supervision; (3) he had poor self-regulation, as exhibited by prior offenses, and that offenses, such as robbery, escalated into sex offenses; and (4) individuals with "cluster b personality disorder," such as antisocial personality disorder, had a higher risk of reoffense than persons without such a disorder.

Padilla ultimately concluded that Wilson met all of the criteria for commitment under the SVPA.

Dr. Christopher Matosich also testified after having evaluated Wilson. Matosich evaluated Wilson in April 2012. Matosich noted that Wilson had been convicted of at least two prior qualifying sex offenses. Matosich diagnosed Wilson as suffering from mental disorders, specifically, paraphilia NOS, polysubstance dependence, and antisocial personality disorder. Matosich, like Padilla, concluded Wilson was likely to reoffend if released. Additionally, Matosich concluded Wilson was not amendable to outpatient treatment. When interviewed, Wilson stated that even if his parole required outpatient treatment, he "wouldn't do it."

Wilson presented testimony from Drs. Mary Jane Adams and Lisa A. Jeko, both psychologists. Adams testified she saw no evidence that Wilson currently suffered from a mental disorder that predisposed him to commit sexually violent acts. Jeko was of the opinion that Wilson did not have a diagnosed mental disorder that satisfied the criteria for SVP commitment and therefore he did not qualify as an SVP.

The defense also presented testimony from James Walter, a licensed psychiatric technician, who had worked at two state hospitals, ASH and CSH, while Wilson was committed to those institutions. Walter did not observe, nor was he aware of any other

4.

staff observing, any paraphilic behavior by Wilson while at ASH. Walter was not aware of any acts of aggression or paraphilic behavior by Wilson while at CSH.

Dr. Peggy Goodale, a clinical psychologist who worked at CSH, testified that in her opinion Wilson did not suffer from a paraphilia disorder—his primary diagnosis was posttraumatic stress disorder. Goodale acknowledged Wilson had committed the predicate sexual offenses, but believed he did not suffer from a paraphilia and therefore would not commit further offenses if released.

Wilson testified in his own behalf. Wilson opined that it would not be beneficial for him to receive treatment for a paraphilic disorder that he did not have. If released as an outpatient, he would accept treatment for posttraumatic stress disorder and perhaps for substance abuse.

The jury found that Wilson met the criteria for commitment as an SVP. The trial court ordered Wilson committed for an indeterminate term as an SVP.

## DISCUSSION

### I. Denial of Request for Continuance

Wilson contends the trial court denied him due process and a fair trial when it denied his request for a continuance of the trial so that he could call another witness, Dr. Ronald Mihordin, who was the current director of the SVPA treatment program in the state hospital system. We reject his contention.

#### *Factual Summary*

Adams testified Mihordin had conducted mandatory training for the professionals performing SVP evaluations for the state. Adams stated Mihordin had cautioned against making a diagnosis of paraphilia NOS based upon the subject's behavior and that both Padilla and Matosich had not followed Mihordin's directive; they "simply reported the facts of the crimes" and "didn't make any attempt to analyze … that it was coercion that was turning [Wilson] on."

5.

Jeko testified that there were communications from Mihordin about the SVP evaluations, but they would not have affected how she conducted her evaluations.

Padilla testified he had been at the mandatory training on SVP evaluations given by Mihordin and it was clear Mihordin had never been a clinician. Padilla stated his reaction to Mihordin's presentation had been "disbelief" and "concern" for the state's treatment program for SVP's. Padilla testified that as an independent contractor with the SVP commitment program, he was not contractually obligated to follow department mandates "when it comes to diagnosis or when it comes to the ultimate decision." Padilla also testified he did not consider anything in Mihordin's presentation to be a directive; rather, they were suggestions. Subsequent to Mihordin's training, Padilla continued to use the diagnosis of paraphilia NOS.

Padilla acknowledged that the term "paraphilic coercive disorder" did not appear in the most current version of the Diagnostic and Statistical Manual of the American Psychiatric Association (DSM), but his exact terminology for the diagnosis was "paraphilic, not otherwise specified, sex with non-consenting persons."

Matosich also acknowledged that the current DSM did not include a category of "paraphilia coercive disorder." Matosich testified, however, that there was "no code for paraphilia-NOS coercive disorder, or many other subtypes. They are all code identified under paraphilia-NOS."

During a break in Wilson's testimony at trial, defense counsel moved for a continuance in order to call Mihordin as a witness. Defense counsel asserted that he was not prepared for Matosich and Padilla to violate "protocols and procedures of the State" and to rely on a diagnosis that was not in the current DSM.

After hearing argument from both the prosecutor and Wilson's counsel, the trial court denied the request. The trial court observed that Mihordin was an administrator in the SVP program who had never interviewed or evaluated Wilson, the evaluations of Wilson that were being relied upon by the prosecutor had been available for months prior

6.

to trial, and there had been extensive testimony around the theory of paraphilia NOS and whether that was a valid diagnosis.

Counsel for Wilson moved for a mistrial based upon the denial of the continuance; the trial court denied the motion. Counsel renewed the motion for a mistrial after presentation of evidence had concluded and the prosecutor had made her opening argument. The trial court again denied the motion.

*Analysis*

A ruling on a motion for continuance of a trial is reviewed for abuse of discretion. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1036 (*Lewis and Oliver*).) Entitlement to a midtrial continuance requires the defendant to "show he exercised due diligence in preparing for trial." (*People v. Danielson* (1992) 3 Cal.4th 691, 705.) When a continuance is sought to secure a witness, the party must show due diligence and that the expected testimony is not cumulative. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 (*Jenkins*).)

Here, eight months prior to trial at the probable cause hearing, both Padilla and Matosich testified they had diagnosed Wilson as suffering from paraphilia NOS, sex with nonconsenting persons. At that time, counsel for Wilson cross-examined both doctors regarding Mihordin's training and presentation. Wilson's counsel specifically questioned the doctors as to whether Mihordin had instructed the evaluators that they were to use a diagnosis of paraphilia NOS only where there was evidence the patient was aroused by coercion and whether the doctors had followed that instruction. Had Mihordin's testimony been important to the defense, there was ample opportunity to secure his attendance at trial without the need for a continuance. That this was not done shows a lack of due diligence.

Furthermore, since Mihordin had never examined or evaluated Wilson, it is unlikely his testimony would have been of any benefit to Wilson. It is clear that Mihordin could not speak directly to any diagnosis of Wilson. At most, Mihordin could

have testified regarding the training presentation given to evaluators, a subject that was covered extensively in testimony from Padilla, Adams, and Jeko. Consequently, any testimony from Mihordin was likely to be cumulative.

Clearly, there was no due diligence exercised to secure Mihordin as a witness. Also, any possible testimony from Mihordin would have related to the training presentation given to the evaluators and would have been merely cumulative. Wilson did not meet his burden of proof to establish that he had exercised due diligence and that anticipated testimony would not be cumulative. (*Jenkins, supra,* 22 Cal.4th at p. 1037.) For these reasons, the trial court did not abuse its discretion in denying the request for a continuance. (*Lewis and Oliver, supra,* 39 Cal.4th at p. 1036.)

## II.    Prosecutorial Misconduct

Wilson claims the prosecutor committed nine acts of misconduct during closing argument. This argument is forfeited.

Wilson acknowledges that no objection or request for admonition was made in the trial court as to any of the instances of alleged prosecutorial misconduct. A claim of prosecutorial misconduct is forfeited unless a defendant makes a specific objection in the trial court and requests an admonishment. (*People v. Grimes* (2015) 60 Cal.4th 729, 780.) There is no reason to believe that an objection and admonishment would not have cured any alleged harm. (*Ibid.*)

We see no need to belabor the issue here as our review of the alleged acts of misconduct has not convinced us that any of the remarks by the prosecutor were improper. The alleged misstatement of the facts were not misstatements at all, but were fair comments on the evidence. The claimed misstatements of law require a strained and isolated interpretation by the jury of what was said by the prosecutor before they rise to the level of misconduct.

Wilson makes a perfunctory claim of ineffective assistance of counsel for failing to object. He argues that there could be no tactical reason for counsel's failure. We

disagree. Counsel very easily could have determined, as we do, that no misstatements of fact or law occurred.

Regardless, Wilson was not prejudiced by the instances of alleged misconduct. The jury was instructed that the evidence consisted of sworn testimony of witnesses and exhibits admitted into evidence, that nothing the attorneys said was evidence and their remarks during argument did not constitute evidence, and that if any of the attorneys' comments on the law conflicted with the trial court's instructions on the law, the jury was to follow the trial court's instructions.

Wilson has not claimed the jury ignored the trial court's instructions, nor has he cited any indication of such. (*People v. Anzalone* (2013) 56 Cal.4th 545, 557.) Consequently, we presume the jury followed the trial court's instructions. (*People v. Fuiava* (2012) 53 Cal.4th 622, 669.) Neither has Wilson asserted that the jury was instructed erroneously. Therefore, any allegedly improper remarks by the prosecutor were not likely to have been prejudicial. (See *People v. Garza* (2005) 35 Cal.4th 866, 881-882.)

## III.    Application of Civil Discovery Statutes

Wilson contends he should be granted a new trial because Padilla and Matosich did not record their interviews with him, which he asserts is required by section 2032.530. We disagree.

### *Factual Background*

Wilson initially filed a motion to exclude testimony from Jeko about his interview and the written evaluation completed by Jeko, claiming that the interview had not been recorded when it was ordered recorded by the trial court. The prosecution opposed the motion, noting that Wilson had sought such an order, but no such order had issued. The prosecution did not call Jeko to testify. Ultimately, however, Wilson called Jeko to testify at trial.

9.

At the probable cause hearing, Matosich testified that Wilson never asked for his interview to be recorded. At that same hearing, Padilla testified that the State Department of State Hospital's policy was that the interview not be recorded. Padilla did receive a request on behalf of Wilson to record the interview; he did not do so.

After the probable cause hearing, Wilson filed multiple motions in limine, one of which sought to exclude the testimony of Padilla and Matosich and the interviews and evaluations they completed on Wilson because the doctors had not recorded the interviews, which Wilson contended was required by former section 2032, subdivision (g)(2). This provision is now codified as section 2032.530, subdivision (a). The trial court denied the motion.

*Analysis*

Section 2032.530 pertains to the conduct of a mental examination ordered by a court pursuant to section 2032.310. Wilson was not being interviewed and examined pursuant to section 2032.310, or any court order. In fact, unlike proceedings under section 2032.310, Wilson had the right to decline to participate in an interview. (*Sporich v. Superior Court* (2000) 77 Cal.App.4th 422, 425, 430 (*Sporich*).) Under section 2032.310, unlike the SVPA, the party must cooperate in the interview or face sanctions. (See § 2032.410.)

Wilson was being interviewed pursuant to the SVPA, specifically, Welfare and Institutions Code sections 6601 and 6604.1. These code sections set forth in detail how the evaluations are to be prepared in anticipation of an SVP commitment or recommitment proceeding; no court order is required. Nothing in Welfare and Institutions Code sections 6601 and 6604.1 specifies that an interview in anticipation of a commitment proceeding must be recorded. What is clear is that Wilson did not have to consent to an interview; he had the right to decline. (*Sporich, supra,* 77 Cal.App.4th at pp. 425, 430.) If Wilson objected to participating in an interview unless it was recorded,

10.

he had the right not to participate in the interview; instead, he chose to proceed with an interview, knowing it would not be recorded.

Furthermore, section 2032.530, subdivision (a) states, "The examiner and examinee shall have the right to record a mental examination by audio technology." The statute does not state that the examinee has the right to force the examiner to record the interview for him or her. Wilson claims he asked the doctors to record the interview. He did not attempt to record the interview, nor was he prevented from recording the interview himself.

Contrary to Wilson's assertion, the case of *People v. Burns* (2005) 128 Cal.App.4th 794 does not hold that Wilson had the right to be provided with an audio recording of his interview. That case merely restates the language of section 2032.530, subdivision (a)—that an examinee has the right to record his interview. (*Burns,* at pp. 804-805.)

The Civil Discovery Act of 1986 (Civil Discovery Act; § 2016.010 et seq.), of which section 2032.530 is a part, is applied in SVPA proceedings on a case-by-case basis. (*People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 994 (*Cheek*).) The scope of the application of the Civil Discovery Act to SVPA proceedings is subject to those provisions of the Civil Discovery Act that authorize a trial court to manage discovery. (*Cheek,* at p. 996.)

Here, the trial court was asked by Wilson to manage discovery by ordering that the provisions of section 2032.530 be applied to SVP interviews and require the interview be audio recorded. The trial court declined to issue such an order. Thus, although the Civil Discovery Act is applicable to SVPA proceedings, it is subject to application on a case-by-case basis and the trial court's authority to manage discovery. (*Cheek, supra*, 94 Cal.App.4th at pp. 994, 996.) The trial court exercised its authority to manage discovery when it declined to order Wilson's interviews be taped. Subsequently, Wilson had the

right to decline to be interviewed by Padilla or Matosich.  (*Sporich, supra,* 77 Cal.App.4th at pp. 425, 430.)

Having failed to obtain a court order to require his interviews be recorded, and having elected thereafter to proceed to be interviewed even though he had the right to decline, Wilson cannot now claim the interviews should have been excluded from evidence.

## IV.     Admission of Testimony

Wilson contends the trial court abused its discretion by allowing Matosich to testify to "highly prejudicial and inflammatory evidence that had little, if any, probative value."  (Capitalization omitted.)  We disagree.

### *Standard of Review*

Only relevant evidence is admissible.  (Evid. Code, § 350.)  Relevant evidence is any evidence tending to prove or disprove any disputed fact.  (*Id.,* § 210.)  Evidence Code section 353 provides that a timely objection and the specific grounds for exclusion of evidence must be asserted in the trial court, and only those specific grounds raised in the trial court for exclusion may be asserted on appeal.  (*People v. Partida* (2005) 37 Cal.4th 428, 433-434 (*Partida*).)

A trial court's evidentiary rulings are reviewed for abuse of discretion.  (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1256.)  A trial court abuses its discretion if it acts in an arbitrary, capricious, or patently absurd manner.  (*People v. Thomas* (2012) 53 Cal.4th 771, 806.)

### *Analysis*

Wilson challenges several descriptive terms used by Matosich.  Wilson, however, failed to object to the use of two of the challenged terms and therefore has forfeited any claim of error.  (*Partida*, *supra*, 37 Cal.4th at p. 434.)  Wilson did not object to Matosich's use of the term "abhorrent behavior" to refer to the prior rapes committed by Wilson or Matosich's use of the term "deviant behavior" to refer to the criminal act of

12.

sodomy.  Having failed to object in the trial court, the issue is not preserved for appeal. (*Ibid.*)

Wilson also challenges Matosich's use of the term "torture" in describing the 1980 rape committed by Wilson because he was "not charged with the crime of 'torture' in the 1980 rape."  When testifying, Matosich referred to "the amount of torture that [the victim] experienced," at which point the defense objected.  The trial court overruled the objection.

This remark from Matosich came after he described the acts that Wilson forced the victim to engage in and the impact of the criminal acts on the victim.  Wilson kidnapped the victim at gunpoint from a store, forced her into a car, and, after the car was driven to the side of a road, Wilson made the victim get out of the car and undress, after which he orally copulated her and licked her breasts.  Wilson then took the victim back to the car, where he forced her to orally copulate him and then vaginally raped her in the front seat. This activity continued for a period of time, with the victim pleading for Wilson to stop.

Matosich noted that the victim's "statement" was that if this were to happen again, she would take her chances on being killed rather than go with her captor.  Matosich then commented, "That speaks to the amount of torture that she experienced."  It was at this point the defense objected.  This was the only time Matosich used the term "torture."  On cross-examination, Matosich clarified that the term "torture" was not in any report.  It was his conclusion because of the way the victim was affected.  He stated, "that was my statement, not the victim's statement."

Even if the use of the term "torture" was improper and the trial court erred in not sustaining the objection, we conclude the use of the term was not prejudicial.  (*People v. Homick* (2012) 55 Cal.4th 816, 879 (*Homick*).)  While Wilson finds the use of the term "torture" objectionable in reference to the acts inflicted on his 1980 rape victim because he was not charged with torturing the victim, there is no reasonable likelihood that any juror interpreted Matosich's remarks to mean that Wilson had been charged with torture.

13.

Under cross-examination from Wilson's counsel, Matosich made it clear this was his term, the term did not appear in any report, and he used the term only once.

Lastly, Wilson contends the discussion of sexual sadism in conjunction with the 1975 rape was prejudicial and not relevant because the facts showed the acts committed by him were consistent with rape, not sexual sadism. Matosich testified that in the 1975 rape, Wilson held a knife to the husband's throat, forced the husband to watch while Wilson forcibly raped and sodomized the wife, "contained" the victim and her husband for a "significant period of time," and tied up the victim and her husband.

Matosich explained that although he did not diagnose Wilson as suffering from sexual sadism, Wilson had engaged in behavior that often is seen among those who are diagnosed with sexual sadism, and those sexually sadistic traits had formed Matosich's diagnosis of Wilson as suffering from paraphilia NOS. The discussion around sexual sadism thus was relevant to Matosich's diagnosis. Relevant evidence is admissible. (*People v. Lucas* (1995) 12 Cal.4th 415, 450.) The clarification that Wilson was not diagnosed as suffering from sexual sadism, in our view, makes the discussion nonprejudicial. (*Homick, supra,* 55 Cal.4th at p. 879.)

## DISPOSITION

The order committing Wilson as an SVP for an indeterminate term is affirmed.

_____
CORNELL, Acting P.J.

WE CONCUR:

_____
GOMES, J.

_____
PEÑA, J.

14.